JOHN GRIFFITH & another,[1] trustees,[2] *vs.* NEW ENGLAND
TELEGRAPH AND TELEGRAPH COMPANY.

Middlesex. December 9, 1992. - April 13, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Massachusetts Oil and Hazardous Material Release Prevention Act. Hazardous Materials. Words,* "Abandoned."

A former lessee that had stored fuel on the leased premises in underground
tanks did not continue to be an "owner or operator" of the fuel storage
site, subject to strict liability under G. L. c. 21E, § 5 (*a*) (1), for costs
of cleaning up petroleum contamination discovered on the premises af-
ter the lease expired, inasmuch as the definition contained in G. L. c.
21E, § 2, includes only present "owners" or "operators"; moreover, the
lessee, having vacated the premises at the end of the term of its lease,
was not subject to liability based on its "abandonment" of a site later
found to be contaminated. [826-829]
In an action under G. L. c. 21E, the Massachusetts Oil and Hazardous
Material Release Prevention Act, this court held that a former owner
or operator of a site found to be contaminated by oil was subject to
strict liability under G. L. c. 21E, § 5 (*a*) (5), for the cost of cleaning
up the site if it caused the release or threat of release of the contamina-
tion; the case was remanded for the judge to make additional findings
on the issue of causation. [829-830]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 11, 1988.

The case was heard by *Robert H. Bohn*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Pamela A. Smith* for the defendant.
*Robert F. Sylvia* for the plaintiffs.

[1] Mark M. Kisiel.
[2] Of the Commonwealth Center Trust.

*David B. Broughel & Christopher E. Mullady,* for Charter International Oil Company, amicus curiae, submitted a brief.

LYNCH, J. The plaintiffs brought an action under G. L. c. 21E (1990 ed.), the Massachusetts Oil and Hazardous Material Release Prevention Act, against New England Telephone and Telegraph Company (NET) to recover expenses incurred for the containment and removal of oil and gasoline from a site leased by NET between 1958 and 1984. A judge in the Superior Court held that NET was the "operator of . . . a site from or at which there is or has been a release . . . of oil or hazardous material," and ordered NET to pay the plaintiffs $461,266 for cleanup costs. See G. L. c. 21E, § 5 (*a*) (1). The Appeals Court affirmed. *Griffith* v. *New England Tel. & Tel. Co.,* 32 Mass. App. Ct. 79, 82 (1992). We granted the defendant's application for further appellate review.

We summarize the relevant facts as found by the judge. In 1958, NET leased property at 959 Concord Street in Framingham from its then owner, the Wyman Two Trust, for use as a garage and testing facility. In April of 1958, the Wyman Two Trust installed three underground fuel tanks at the property, two for gasoline storage, and one for fuel oil storage. Throughout its tenancy, NET was the exclusive user of the three tanks. Any gasoline or fuel oil brought onto the property and stored in the tanks was purchased by NET for its own use.

In September of 1978, the plaintiff trust purchased the property from the Wyman Two Trust and assumed NET's lease. The parties agreed that NET would vacate the premises two weeks before the expiration of the lease, and that the plaintiffs would forgo rent and tax payments otherwise due for this two-week period.

After NET left the property, the building that it had used for testing and storage was demolished. In early 1984, the three fuel tanks that had been buried in 1958 were excavated and did not show any signs of leakage. The property was then fenced off and left vacant for approximately two years.

In 1986, the plaintiffs decided to construct a new office building on the property. In October of that year, an excavation subcontractor beginning work on the new building discovered what appeared to be petroleum contamination in the soil near the location of the heating oil tank that had been used by NET. In November of 1986, an environmental testing firm discovered a second area of petroleum contamination, this time near the location of the two gasoline tanks used by NET.[3]

Once the contamination of the property was discovered, the plaintiffs notified the Department of Environmental Quality Engineering (now the Department of Environmental Protection), cleaned up the site, and incurred $461,266 in cleanup expenses. They filed the instant action under G. L. c. 21E to recover those expenses from NET.

1. General Laws c. 21E, § 4, creates a private right of action whereby any person who undertakes the containment and removal of oil or hazardous material can recover cleanup costs from "any other person liable" for the contamination. The judge ruled that NET was a "person liable" to the plaintiffs for the cleanup costs under G. L. c. 21E, § 5 (a) (1). We disagree.

General Laws c. 21E, § 5 (a), identifies five categories of persons liable for cleanup costs.[4] *Wellesley Hills Realty*

---

[3]The judge found that both of these areas had been contaminated between 1958 and 1984, and both had been contaminated by oil and gasoline that NET had brought onto the property.

[4]General Laws, c. 21E, § 5 (a) (1990 ed.), states in pertinent part:

"Except as otherwise provided in this section, (1) the owner or operator of a vessel or a site from or at which there is or has been a release or threat of release of oil or hazardous material; (2) any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material; (3) any person who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material; (4) any person who, directly, or indirectly, transported any hazardous material to transport, disposal, storage or treatment vessels or sites from or at which there is or has been a release or threat of release of such material;

*Trust* v. *Mobil Oil Corp.*, 747 F. Supp. 93, 95 (D. Mass. 1990). Section 5 (*a*) (1) first defines a "person liable" as an "owner or operator of . . . a site from or at which there is or has been a release . . . of oil or hazardous material." The issue is whether the definition of "owner or operator" in the statute applies only to present owners or operators or whether it encompasses past owners or operators as well.

General Laws c. 21E, § 2, defines "[o]wner" or "[o]perator" as "any person owning or operating such site." This definition indicates that only present owners or operators are strictly liable where there has been a release of oil or hazardous material on their property, regardless of when the release itself occurred. *Wellesley Hills Realty Trust* v. *Mobil Oil Corp.*, *supra* at 96. Since NET was not such a present operator, it does not fit within this definition. General Laws c. 21E, § 2, also defines "[o]wner" or "[o]perator" as "in the case of an abandoned site, any person who owned, operated, or otherwise controlled activities at such site immediately prior to such abandonment, but neglects to define "abandoned." The Appeals Court held that NET was liable because it was an operator who had "abandoned" the site, defining the term as "to give up by leaving or ceasing to operate." *Griffith* v. *New England Tel. & Tel. Co.*, *supra* at 82. We do not agree.

The Federal superfund statute — the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), in many ways analogous to c. 21E — uses that term differently. *Oliveira* v. *Pereira*, *ante* 66, 71 n.7 (1992). *Sanitoy, Inc.* v. *Ilco Unican Corp.*, 413 Mass. 627, 630 n.5 (1992). See *Dedham Water Co.* v. *Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1156 (1st Cir. 1989) (G. L. c. 21E patterned after CERCLA). For the purposes of CERCLA, "[a]bandoned sites" are described as "those where no owner can be found or when the owner cannot afford the cost

---

and (5) any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, shall be liable, without regard to fault . . . ."

of clean up." H.R. Rep. No. 1016 (Part I) 96th Cong., 2d Sess. 20 (1980), reprinted in 1980 U.S.C.C.A.N. 6119, 6123. See *United States* v. *Sharon Steel Corp.*, 681 F. Supp. 1492, 1495 (D. Utah 1987). If that definition applies, the site would not be "abandoned" because the owners are known and can afford to clean up the property. Thus NET could not be held liable under the CERCLA definition of "owner or operator."[5]

Black's Law Dictionary defines the term "abandoned property" as property to which the owner "has relinquished all right, title, claim, and possession, but without vesting it in any other person." Black's Law Dictionary 3 (6th ed. 1990). After the termination of a lease, the lessee has no rights to abandon; its temporary right to occupy the property has expired. Moreover, leased property that has been vacated at the end of the lease term does not fall within the common understanding of the word "abandoned." Simply because the parties in this case agreed on a lease termination two weeks early does not change the situation into an abandonment.

Moreover, within the context of zoning we have said that an "abandonment" of a nonconforming use must result from "the concurrence of (1) an intent to abandon and (2) volun-

---

[5]We note, however, that, while the definition of "owner or operator" in c. 21E was virtually identical to the language in CERCLA as it was originally enacted, see *John Boyd Co.* v. *Boston Gas Co.*, 775 F. Supp. 435, 440 n.15 (D. Mass. 1991), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. 99-499, 100 Stat. 1613, substantially changed the Federal definition. Thus, though we have attempted to apply c. 21E consistently with CERCLA, the present difference in the language of each statute's definition of "owner or operator" does not allow us to interpret them similarly. See *Acme Laundry Co.* v. *Secretary of Envtl. Affairs*, 410 Mass. 760, 770-771 (1991).

CERCLA, as amended, now limits abandonment "to a unit of State or local government." 42 U.S.C. § 9601 (20)(A)(iii). Section 20(A) states: "The term 'owner or operator' means . . . (ii) in the case of an onshore facility or an offshore facility, any person owning or operating such facility, and (iii) in the case of any facility, title or control of which was conveyed due to bankruptcy, foreclosure, tax delinquency, abandonment, or similar means to a unit of State or local government any person who owned, operated or otherwise controlled activities at such facility immediately beforehand."

tary conduct, which carries with it the implication of abandonment." *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth,* 385 Mass. 205, 220-221 (1982). "Mere nonuse or sale of property does not, by itself, constitute an abandonment." *Derby Ref. Co.* v. *Chelsea,* 407 Mass. 703, 709 (1990).

Thus, if we apply the words of the statute as they are employed in these cases, as they are commonly understood, or as they are defined by CERCLA, we reach the same conclusion: NET is not a "person liable" under § 5 (*a*) (1).

2. The plaintiffs argue that, although the judge ruled that NET was liable under § 5 (*a*) (1), he also made findings sufficient to prove that NET was liable under § 5 (*a*) (5). In an amicus brief, Charter International Oil Company suggests that the so-called "petroleum exclusion" provides NET with a complete defense to any claim under the statute. We hold that NET can be held liable under § 5 (*a*) (5), if it is found to have caused the release of the oil from the site. General Laws c. 21E, § 2, specifically excludes oil from the definition of "[h]azardous material" ("[t]he term shall not include oil"). This so-called "petroleum exclusion" originated in the provisions of CERCLA. See 42 U.S.C. § 9601 (14); *Wilshire Westwood Assocs.* v. *Atlantic Richfield Corp.,* 881 F.2d 801 (9th Cir. 1989). The exclusion is particularly relevant in §§ 5 (*a*) (2) - (4). In particular, § 5 (*a*) (2) describes a "person liable" as "any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material." Since oil is excluded from the definition of "hazardous material," as used in this section, past owners or operators of sites contaminated by oil are not included within the purview of § 5 (*a*) (2) and, thus, cannot be held strictly liable for oil contamination occurring while they owned or operated the site. *Wellesley Hills Realty Trust* v. *Mobil Oil Corp., supra* at 96. This same view has been followed by Federal courts interpreting the comparable provision in CERCLA, 42 U.S.C. § 9607 (a)(2)(B).

See *Wilshire Westwood Assocs.* v. *Atlantic Richfield Corp.*, *supra* at 802. Thus, § 5 (*a*) (2) incorporates the "petroleum exclusion" that originated in CERCLA into § 5 (*a*).

By including § 5 (*a*) (5), however, the Legislature added a provision not present in CERCLA. See 42 U.S.C. § 9607. Section 5 (*a*) (5) describes the fifth category of a "person liable" as "any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a . . . site." It is apparent that this subsection was added to establish liability over past owners or operators of oil-contaminated sites when they have "caused" a release of oil from the site. *Wellesley Hills Realty Trust* v. *Mobil Oil Corp.*, *supra* at 96. The subsection retains the "petroleum exclusion" provided by § 5 (*a*) (2), only to the extent that past owners or operators of property contaminated by oil who did not "cause" the contamination are excluded. Thus, we hold that under § 5 (*a*) (5), a past owner or operator of a site contaminated by oil can be held liable if that person "caused" a release or threat of a release of oil from the site.

The judge found that "[b]oth of these areas had been contaminated between 1958 and 1984; and both had been contaminated by oil and [gasoline] that NET had brought onto the property." These findings do not establish that NET "caused" the release or a threat of a release of oil from the site. We therefore remand the case to the Superior Court for further findings on this issue.

3. NET argues that, even if it was liable for cleanup costs under c. 21E, the lease termination letter of January 16, 1984, acted as a release of all claims against NET. This argument fails for the reasons stated by the Appeals Court.

We reverse the judgment, and remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*