PROVIDENCE AND WORCESTER RAILROAD COMPANY *vs.*
CHEVRON U.S.A. INC. & others.[1]

Worcester. September 8, 1993. - November 2, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Massachusetts Oil and Hazardous Material Release Prevention Act. Nui-*
*sance. Negligence,* Hazardous substance. *Proximate Cause. Restitu-*
*tion. Practice, Civil,* Directed verdict. *Evidence,* Expert opinion. *Con-*
*tract,* Indemnity.        .

At the trial of claims based on the Massachusetts Oil and Hazardous Ma-
terial Release Prevention Act, common law nuisance, negligence, and
restitution seeking recovery for costs incurred by the plaintiff in re-
sponding to petroleum contamination found on its property, the judge
properly allowed motions by the two defendants for directed verdicts
where, on the evidence considered most favorably to the plaintiff, and in
the absence of expert testimony establishing causation, the jury would
not have been warranted in finding that either defendant caused the
contaminations. [321-323]
An indemnity provision contained in an agreement by which a petroleum
company assigned its lease of a certain premises to another petroleum
company did not, in the circumstances, obligate the assignee to reim-
burse the assignor for the cost of defending an action based on the as-
signor's alleged wrongdoing in 1972, months before the assignee ac-
quired the lease of the premises from the assignor. [323-324]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 29, 1989.

The case was tried before *Elizabeth Butler,* J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

---

[1]Pioneer Oil Company, Inc., and Gulf Oil Corporation (Gulf).

We are advised that Chevron U.S.A., Inc. merged with Gulf in July,
1985, under the name Chevron U.S.A. Inc. The events in issue involve the
actions of Gulf, and we shall refer to Gulf (and not Chevron), just as was
the practice at trial.

*Mark J. Zimmermann,* of Connecticut, for the plaintiff.

*David A. Brown (Thomas H. Hannigan, Jr.,* with him) for Chevron U.S.A. Inc. & another.

*T. Philip Leader* for Pioneer Oil Company, Inc.

WILKINS, J. The principal issue in this case, arising from the trial judge's allowance of the defendants' motions for directed verdicts, is whether the jury would have been warranted in finding that one or both of the defendants caused petroleum contamination discovered in 1988 in soil on property in Worcester now owned by the plaintiff railroad (P & W). We transferred P & W's appeal to this court on our own motion. We affirm the judgment for the defendants.

P & W seeks to recover costs it incurred in responding to contamination found on its property. P & W also seeks a declaration of the defendants' obligation to reimburse P & W for future damages. P & W bases its claims on the Massachusetts Oil and Hazardous Material Release Prevention Act (G. L. c. 21E [1992 ed.]), common law nuisance, negligence, and restitution. If, as we conclude, a jury would not be warranted in finding that either defendant caused the contamination, none of the theories of liability argued by P & W would be supported by the evidence.

P & W discovered the contamination in 1988 as a result of an environmental assessment of the site. Gulf Oil Corporation (Gulf), while a lessee of a predecessor in title of P & W, had stored fuel oil and operated a wholesale distribution depot there for many years until 1973. P & W's claim that Gulf caused the contamination found in 1988 is based solely on a leak of fuel oil from Gulf's storage facility that had occurred on the site on January 15, 1972, sixteen years earlier. The defendant Pioneer Oil Company, Inc. (Pioneer), subleased space on the site from Gulf beginning in 1971 and continued to use the site until 1983 after Gulf ceased operations there and assigned its lease to Pioneer. The plaintiff makes no substantial claim that the evidence warranted a finding that Pioneer caused or was otherwise responsible for the 1972 oil spill. The focus of P & W's appellate argument is that Gulf caused it.

Pioneer is fully involved, however, in a collateral dispute with Gulf, raised by Gulf's cross claim against Pioneer, concerning the extent of Pioneer's indemnification obligation contained in the 1973 agreement that assigned Gulf's lease to Pioneer. Gulf seeks from Pioneer the cost of its defense of P & W's claim. The trial judge was correct in deciding that Pioneer had no indemnity obligation to Gulf. We shall first discuss the directed verdict issue.

In assessing the evidence and in deciding what inference the jury could reasonably draw from it, we must view the record in the light most favorable to P & W. *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). Our concern is with the evidence both of the 1972 spill and the contamination found in 1988. No expert testified that the 1972 spill, more probably than not, was a cause of the 1988 contamination. P & W argues, however, that, because the 1972 spill occurred at substantially the same place where the contamination was found in 1988 and because there is no other evidence of a spill on the site, the jury would have been warranted in finding a causal relationship between the spill and the contamination, even without expert testimony. We disagree.

The evidence of the nature of the 1972 fuel oil spill came solely from Robert Brunell, who had been president of Pioneer in 1972. Brunell was summoned to the site in the early morning of January 15, 1972, after a Gulf driver had discovered fuel oil leaking from a ruptured pipe. Brunell stopped the leak that was caused by a crack in the elbow of an overhead transfer pipe, but not before 12,000 gallons of oil had leaked out and formed a ten-foot by twenty-foot pool in a low spot on the site. The area of pooling was a low point that collected surface water run-off from the site and from off the site. According to the plaintiff's expert, this low area was also the place toward which subsurface water flowed from almost every direction. Sometime during the afternoon all the pooled oil was pumped from the surface of the site. Nothing was done to the soil where the pooled oil had collected. There was no evidence as to the condition of that soil immediately after the pumping. Water in the area was fro-

zen enough to stand on, but there was no direct evidence that the ground was frozen or on the permeability of the ground, frozen or not, to oil. Brunell was not aware of other oil spills while Gulf leased the property.

In 1988, Donald Pomeroy, then an employee of International Technology Corporation, conducted a preliminary assessment survey of the site. Pomeroy testified that he could not definitely state the extent of petroleum contamination that he found on the site and that more work would have to be done in order to do so. He was unable to determine the date of the contamination found in soil samples taken from the site. On cross-examination, Pomeroy described biodegradation as the decomposition of hydrocarbons in the ground caused by naturally occurring bacteria. Pomeroy was not asked whether, in his opinion, any contamination he found in the soil in 1988 was caused by the January, 1972, fuel oil leak. The only reasonable inference from Pomeroy's testimony and the absence of any opinion from him linking the 1972 spill to the contamination is that he was not able to form an opinion on that point.

The judge properly allowed the defendants' motions for directed verdicts. The question whether P & W presented enough evidence to warrant the conclusion, sufficient to support liability, that one or both of the defendants caused the soil contamination found on the site in 1988 is highly fact-oriented. Here the circumstances do not support a finding of a causal link between the 1972 spill and 1988 contamination. There is no evidence that the soil was significantly saturated because of the 1972 spill. Sixteen years passed between the two events. The question whether any spilled oil would still be there in some form is left unanswered in the face of evidence of (1) biodegradation of oil as a consequence of bacteria in the soil, (2) the fact that the site of the spill attracted run-off from on and off the P & W property, and (3) the inconclusiveness of the testing that P & W conducted in

1988.[2] If P & W's expert was not asked to give an opinion whether the 1988 contamination was caused at least in part by the 1972 spill (and inferentially was unable to give such an opinion), it is not surprising that we conclude that the jury would not have been able to form such an opinion either. We do not say that expert testimony is required to establish causation in every soil contamination case. The general subject can be complicated, however, and is not one that jurors would be expected to understand in many circumstances without guidance from an expert. Cf. *Goffredo* v. *Mercedes-Benz Truck Co.*, 402 Mass. 97, 104 (1988) (expert testimony needed on causal relation between alleged design defect and accident). This is one of those cases.[3]

There remains the question whether Pioneer is liable to Gulf for the cost to Gulf of its defense of P & W's actions. Gulf's claim is based on an indemnity provision contained in

[2]Another element often involved in subsoil pollution claims is the consequence of groundwater flow. See, e.g., *Dedham Water Co.* v. *Cumberland Farms, Inc.*, 689 F. Supp. 1223, 1228-1233 (D. Mass. 1988), rev'd on other grounds, 889 F.2d 1146 (1st Cir. 1989). There was evidence in the case before us that the contamination was below the water table, that groundwater in the vicinity flowed toward the area where the oil pooled in 1972, and that there were off-site petroleum uses in the vicinity.

[3]Because the evidence was insufficient to warrant a finding that the 1988 contamination was caused by the 1972 oil spill, we need not consider whether the evidence warranted a finding under G. L. c. 21E, § 5 (*a*) (5), that Gulf "caused or is legally responsible" for the release "without regard to fault." Gulf argues alternatively that the evidence would not warrant a finding that it caused the 1972 leak. The judge did not pass on this issue. We leave to some other case the question whether the fact that oil spilled which a defendant had brought onto a site and stored there in tanks is sufficient to establish a case under G. L. c. 21E, § 5 (*a*) (5). See *Griffith* v. *New England Tel. & Tel. Co.*, 414 Mass. 824, 830 (1993) (finding that defendant brought oil onto premises in itself not sufficient to establish that defendant "caused" release of oil); *Wellesley Hills Realty Trust* v. *Mobil Oil Corp.*, 747 F. Supp. 93, 97 (D. Mass. 1990) (opining that defendant's failure to clean up oil that leaked from underground storage tank on its property would meet causation requirement of § 5 [*a*] [5]).

We also need not consider P & W's claim, made only in passing, that Gulf and Pioneer had obligations under leases to maintain the premises and hence were "legally responsible" (§ 5 [*a*] [5]) for the spill. We note, however, there was no evidence indicating that the spill was caused by improper maintenance.

the agreement by which Gulf assigned its lease of the Worcester premises to Pioneer, effective January 1, 1974. In December, 1973, Pioneer agreed "to indemnify and hold [Gulf] safe and harmless from any and all obligations including obligations for performance, defaults, claims or damages against [Gulf] in law or in equity covering the [1969 lease of the premises to Gulf]." Gulf argues that this provision obliges Pioneer to reimburse Gulf for the cost of defending an action based on Gulf's alleged wrongdoing in 1972, months before Pioneer acquired the lease of the premises from Gulf. Whatever right of indemnification Gulf may have had included the cost of Gulf's successful defense of P & W's claims. See *Amoco Oil Co.* v. *Buckley Heating, Inc.*, 22 Mass. App. Ct. 973 (1986).

Our task, as noted by the judge, is to construe the indemnity clause fairly and reasonably in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished. *Shea* v. *Bay State Gas Co.*, 383 Mass. 218, 222 (1981). An agreement to hold a party harmless from the consequences of that party's prior conduct should be explicit because such an indemnification is not consistent with normal expectations. Gulf's defense costs in this litigation are not obligations "covering" the 1969 lease to Gulf. Whatever this ambiguous language means, it does not provide Gulf protection from the consequences of Gulf's alleged fault arising from the 1972 oil spill.

We affirm the judgment entered against the Providence and Worcester Railroad Company and the judgment entered in favor of Pioneer Oil Company, Inc., on the cross claim of Chevron U.S.A. Inc. and Gulf Oil Corporation.

*So ordered.*