Brady, J.
Following remand from the Supreme Judicial Court “for further proceedings on the issue of causation” (Marenghi v. Mobil Oil Corp., 416 Mass. 643, 647 (1993), plaintiffs and Mobil have cross-moved for summary judgment. The issue which the Supreme Judicial Court directed the parties and the court to focus on is “whether the fact that oil spilled which defendant had brought on to a site and stored there in tanks is sufficient to establish [causation] under G.L.c. 21E, §5(a)(5).” After oral argument and consideration of the parties’ briefs, I conclude that the answer is no.
Mobil’s involvement with the Malden site was as follows. From 1935 to September 1982, Victor and Barker Barton owned and operated a gasoline service station on the subject property. From approximately 1955 to September 1982, the Bartons operated the service station as a Mobil dealer. Mobil sold its brand of gasoline to the Bartons under retail dealer contracts, which product was then stored in underground storage tanks owned and installed by Mobil and leased to the Bartons under a series of equipment loan agreements. In 1955 a 2,000-gallon tank was installed by Mobil. In 1977, that tank leaked. In accordance with the applicable maintenance provisions of the equipment loan agreement, the Bartons notified Mobil, who promptly investigated the spill, removed the leaking tank, fixed the leak, and put the tank back into the ground. Neither the Bartons nor Mobil allegedly took any steps to remove surrounding soil which may have been contaminated by the leak. No one disputes that Mobil, however, complied with its contractual obligations with the Bartons with respect to the leaking tank. The record does not reflect why the tank leaked. Presumably the tank simply wore out and sprung a leak. There is no specific evidence (by expert testimony or otherwise) that Mobil could have or should have done anything to have prevented the leak. There is no evidence that it is unreasonable to use such a tank for over 22 years. No argument is advanced that Mobil violated any state or federal statutes or regulations with respect to underground storage tanks.[1]
In September 1982, the Bartons sold the properly to the plaintiffs, who continued to use the site as a filling station. In 1988, the plaintiffs uncovered contaminated soil in the vicinity of the tank which leaked in 1977. It is this contamination for which the plaintiffs seek to recover response costs under G.L.c. 21E, §§4 and 5(a) against Mobil and the Bartons.[2] Plaintiffs also claim against the Bartons for misrepresentation.
Questions of liability for leaking underground gasoline storage tanks come frequently before the Superior Court. Like the instant case, the plaintiff is usually the present owner of the oil contaminated site, and the defendant a past owner who owned the site when the release occurred.[3] Since it is now well established that a past owner of a site where a release of oil occurred is not “status liable” under c. 21E, §5(a) (Griffith v. New England Tel. & Tel. Co., 414 Mass. 824, 830 (1993)), the plaintiff to succeed must prove that the defendant “otherwise caused or is legally responsible for” the release.
The task of the court is to construe the statute; it is not to make social policy. The legislation imposes liability for hazardous waste contamination more extensively than for oil contamination.[4] Although oil contamination is covered by c. 21E, §5(a), there is a notable distinction between oil and hazardous material. A person can be held liable under c. 21E, §5(a) for oil contamination if (1) that person is a present owner of a vessel or site from or at which there is or has been a release or threat of release of oil (§5(a)(1)), or (2) that person “otherwise caused or is legally responsible for” a release or threat of release of oil (§5(a)(5)). Liability under the five subsections of §5(a) is imposed “without regard to fault.”
The phrase “otherwise caused or is legally responsible for” presents construction difficulties, mainly because it does not delineate the conduct for which liability is to be imposed. Causation, in general, has been described as “the most metaphysical of all the elements of negligence.” 37 M.P.S. §225, p. 370. Pro-sser and Keeton point out that “[t]here is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion.” Prosser and Keeton, Torts, 5th ed. p. 266. In Sections 5(a)(l)-5(a)(4) the legislature has spelled out the conduct and/or the status for which liability for releases will be imposed. In Section 5(a)(5), however, the conduct for which legal responsibility will be imposed is, unhappily, left undefined.
In what sense can Mobil in this case be said to have “caused” the spill? Plaintiffs’ argument is that Mobil’s involvement with the property was so extensive that one must infer, as a matter of law, that Mobil brought about the release. Plaintiffs advance nothing specific that Mobil did or failed to do that occasioned the release. Plaintiffs argue, however, that §5(a)(5) liability is liability “without regard to fault,” i.e. strict statutory liability. Generally speaking, the law imposes strict liability for conduct or activity that creates such a risk that the enterprise carrying on the activity ought to bear the cost of it. Prosser and Keeton, Torts, 5th ed., 537; R. Keeton, Legal Cause in the Law of Torts (1963), pp. 104-17. A risk of franchising service stations and providing and delivering brand gasoline to be stored in franchisor-owned underground storage tanks for sale by the dealer to the public is that, from time to time, fuel will escape and contaminate the environment. Mobil, having (presumably) profited from that *147 activity over many decades with respect to the property in question, ought to pay the cost of cleaning up the property from enterprise-generated damage. Essentially plaintiffs would construe the “causation” section as imposing strict liability on an enterprise like Mobil because a release of oil is within the risk created by that business.
This is a plausible argument and one which finds some support in the caselaw. In Wellesley Hills Realty Trust v. Mobil Oil Corp., 747 F.Supp 93, 98 (D.Mass. 1990), the Court ruled on a rule 12 motion that allegations in a complaint (and inferences to be drawn therefrom) that Mobil “owned the site continuously for a period of sixty years, that it operated a gas station on the property for those sixty years, that it stored oil on the property, and that releases of oil occurred during that time” were sufficient to support a claim of causation under §5 (a) (5).
On the other hand, the Supreme Judicial Court in Griffith v. New Eng. Tel. & Tel. Co., 414 Mass. 824 (1993), rejected a causation claim under §5{a)(5) on similar facts. There the defendant N.E.T. leased property in Framingham from 1958 to 1984. In 1958 the owner installed three underground storage tanks. Throughout its tenancy N.E.T. was the exclusive user of the tanks. Any gasoline or fuel oil brought onto the property and stored in the tanks was purchased by N.E.T. for its own use. The trial judge found that areas had been contaminated between 1958 and 1984 by oil and gasoline that N.E.T. had brought onto the property. The SJC held that these findings did not establish that N.E.T. had “caused” the release, and remanded for further findings. Griffith at 830.
The remand in the instant case, as well as footnote 3 in Providence & Worcester Railroad Co. v. Chevron USA, Inc., 416 Mass. 319, 323 (1993), call into question whether Griffith is still good law. If it is, it would seem to require a ruling in favor of Mobil here, because Mobil’s involvement with the site was not as substantial as was N.E.T.’s in Griffith. Unlike N.E.T., Mobil did not occupy the property, use the tanks, or store or own the oil.[5] If the facts in Griffith did not support causation, neither do the facts here.
There is, however, a more compelling argument that Mobil cannot be held liable under §5(a){5) on the facts here. After noting that Mobil cannot be held liable solely for its having owned the tank which leaked, the SJC remanded this case because additional facts appeared, namely that Mobil had brought the oil onto the site and stored it there in tanks (but see footnote 5 herein with respect to storage). The SJC did not suggest that there were any other facts germane to the causation issue, and there do not appear to be any. The statute has two specific subsections which deal with persons who transport and store hazardous material. Sections 5(a)(3) and 5(a)(4) impose status liability as follows:
(3) Any person who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material;
(4) Any person who, directly or indirectly, transported any hazardous material to transport, disposal, storage or treatment vessels or sites from at which there is or has been a release or threat of release of such material.
(Emphasis added.) These sections apply to transportation and storage of hazardous materials but not oil. In Griffith, the SJC reasoned that since oil was omitted from §5(a)(2), which imposes status liability upon past owners of hazardous material contaminated sites, past owners of oil-contaminated sites could not be held strictly liable for releases of oil. By parallel reasoning, a party who arranges for the transport of oil and transports oil to an underground storage tank cannot be held liable because oil is omitted from §5(a)(3) and 5(a)(4), just as oil was omitted from §5(a)(2). In this case, all Mobil did falls squarely within those portions of the statute for which oil releases are not covered. That is, Mobil was a past owner of the tank, an arranger for transportation of oil to the tank, and a transporter of oil to the tank. Since those are statuses for which the legislation does not impose liability for oil releases, it would alter the manifest meaning of the statute to hold that a combination of tank ownership and transportation would impose liability under the sweeping “causation” provision of §5(a)(5).
No doubt §5(a)(5) imposes liability under some circumstances for oil contamination. Although this section is difficult to construe in the absence of delineated conduct for which liability is to be imposed, it would certainly seem that intentional acts of direct oil contamination into the environment are within its ambit.[6] Someone who “dumps” oil in his backyard would no doubt be within the core aspect of §5(a)(5). It is also plausible to argue, since the concepts of “causation” and “duty” are interrelated, that breaches of common law duties, whether contract or tort, could give rise to liability under §5(a)(5), notwithstanding that ordinarily there is no common law duty on an owner of land to maintain the land in a certain condition, or to refrain from activity affecting the property, which would extend to future owners of the land. Wellesley Hills Realty Trust v. Mobil Oil Co., 747 F.Supp. 93, 100 (D.Mass. 1990).[7] But no specific intentional acts of contamination, or breaches of common law duties, are present here. So far as it appears in this record, Mobil did not breach its maintenance duties under the contract with the Bartons, nor any duty of care under negligence principles with respect to the installation and servicing of the tank. Moreover, the plaintiff has not argued, either on the original summary judgment *148 motion before me or on remand, that Mobil’s activities fall within strict tort liability under Restatement, Torts, 2d, §§519-520 (abnormally dangerous activities). Although Massachusetts does recognize strict liability, see generally Clark-Aiken Co. v. Cromwell-Wright Co., Inc., 367 Mass. 70, 72-87 (1975), the rule applies only to a narrow class of cases involving “such unusual and extraordinary uses of property in reference to the benefits to be derived from the use and the dangers or losses to which others are exposed, as should not be permitted except at the sole risk of the user.” Ainsworth v. Lakin, 180 Mass. 397, 399 (1902). At least one Superior Court judge has held that storage of oil in underground tanks does not fit within this class. Garweth Corporation v. Boston Edison Company, Suffolk Sup. Court No. 90-4437 (Opinion by Botsford, J. Sept. 12, 1991), Mass. Envir. Lit. Clearinghouse, Vol. I, ELC 48-001.[8]
For these reasons, I rule that there is no basis upon which to impose liability upon Mobil under c. 21E, §5(a)(5).
ORDER
For the reasons stated above, plaintiffs’ motion for summary judgment is DENIED; Mobil’s motion for summary judgment is ALLOWED. The remaining issues under the amended complaint between plaintiffs and the Bartons shall be tried, after which final judgment shall be entered on all of the claims.

 E.g., 42 U.S.C. §6991b now requires leak detection systems, tank testing and other methods of detecting and correcting sudden and non-sudden releases of petroleum from underground storage tanks.

 A factual issue exists as to whether the contamination found in 1988 is that which resulted from the 1977 tank leak. See Providence & Worcester Railroad Co. v. Chevron. U.P.S.A, Inc., et al., 416 Mass. 319, 322-23 (1993). Mobil presents the affidavit of an expert witness who contests this. Plaintiffs’ expert’s affidavit is less than clear on the issue; however, plaintiffs’ counsel at oral argument assured me that his expert has told him that in his opinion the 1988 contamination is from the 1977 leak. Were I not to decide the motions in favor of Mobil for other reasons, I would afford plaintiffs an opportunity to submit a supplemental affidavit of their expert. R. 56(f), Mass.R.Civ.P.

 “Site" includes an underground storage tank. G.L.c. 21E, §2.

 Oil contamination is not covered under the federal super-fund statute (42 U.S.C. §9601, et. seq.) upon which c. 21E is based.

 Although the remand in this case perhaps implies otherwise, as I read the record Mobil did not “store" the gasoline. It sold the gasoline to the Bartons, who stored it in tanks which they leased from Mobil. The Bartons did not buy the gasoline on consignment. (A 31 and 251.) The Bartons, not Mobil, ran the day-to-day business of the service station.

 Examples of such direct acts of pollution from cases which have come before this judge are as follows: A person who sprays oil on his property to keep the dust down would be liable for the resulting contamination. Bisson v. Eck, Norfolk Superior Court, No. 89-1522 (case tried in Dedham in June 1993). Similarly, a service station owner who cleans up the bay of his garage with gasoline which then finds its way into the soil or groundwater would be liable. K.L.K. Real Estate, Inc. v. Amoco Oil Co., et al., Norfolk Superior Court, No. 86-1476 (case tried in Dedham in July 1993).

 As is illustrated by the Wellesley Hills Realty Trust case, subsequent owners of contaminated land, in the absence of fraud or contract, do not usually have a common law action against their predecessors in title. Negligence, nuisance, trespass and strict liability actions only lie when the interference is with the property of another. It is possible to argue, however, that Section 5(a)(5) extends the right to recover under such common law theories to subsequent owners of polluted land. That argument has not been developed here.

 Cases from other jurisdictions are split on whether storage of oil in underground storage tanks is abnormally dangerous or ultrahazardous. Compare Arlington Forest Associates v. Exxon Corp., 774 F.Supp. 387 (E.D. Va. 1991) (UST’s not abnormally dangerous under Virginia law), with Exxon Corp. v. Yarema, 516 A.2d 990 (Ct. Spec. App. Maryland, 1986) (USTs abnormally dangerous in Maryland); 5 A.L.R. 5th 40.