JOHN BEAUDETTE, INC. *vs.* J.P. NOONAN
TRANSPORTATION, INC.

Middlesex. October 6, 1994. - January 11, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Hazardous Materials. Practice, Civil,* Instructions to jury. *Massachusetts Oil and Hazardous Material Release Prevention Act.*

In a civil action brought by a property owner under G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act, to recover expenses it incurred remedying gasoline contamination on the property, there was no error in the judge's instructions on the plaintiff's and defendant's respective burdens of proof under G. L. c. 21E, §§ 4, 5 (*a*) (5), and 5 (*b*). [313-315]

CIVIL ACTION commenced in the Superior Court Department on March 31, 1989.

The case was tried before *Elizabeth Butler*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Stephen J. Brake* (*Julie Anne Trachten* with him) for the plaintiff.

*Joseph H. Aronson* (*Amy M. Soisson* with him) for the defendant.

LYNCH, J. The plaintiff brought an action under G. L. c. 21E (1992 ed.), the Massachusetts Oil and Hazardous Material Release Prevention Act, to recover expenses it incurred remedying gasoline contamination on its property. It alleged that the defendant, along with five other companies, was responsible for causing the contamination and, therefore, was liable for reimbursement of the response costs, pursuant

to § 4 of G. L. c. 21E.[1] The jury returned a verdict for the defendant, and the plaintiff filed a timely notice of appeal. We granted the plaintiff's application for direct appellate review. We affirm the judgment.

There was evidence from which the jury could have found the following relevant facts. The plaintiff purchased the subject property, a gasoline service station located at 225 Main Street in Rockport, in 1978. In early 1988, gasoline vapors were detected coming from the sewer on Main Street near the service station. On March 1, 1988, a claim was filed by the Department of Environmental Protection (department) requiring the plaintiff to investigate the fumes and, if necessary, to take remedial action. In February, 1989, the department issued a notice of responsibility to the plaintiff ordering it to take response action to remedy the situation. Subsequent investigation confirmed that releases of gasoline had occurred at the site. Since that discovery, remedial activities, including an emergency short-term measure, a hydrogeological study, and a long-term remediation involving the recovery and treatment of groundwater, have been performed.

There has been a history of gasoline spills and leaks at the site dating back to 1969. In September, 1969, an underground storage tank ruptured causing a release of approximately 300 gallons of gasoline. Again, in 1975, there was a release of gasoline from one or more of the underground storage tanks on the premises. In 1981, gasoline fumes were detected on the adjoining property, and a storage tank on the property adjacent to the site was found to be leaking. After this discovery, the plaintiff's tanks were eventually tested. The testing revealed that the tanks were leaking and water had seeped into the tanks. In November, 1987, a new gasoline dispensing system was installed on the site. Gasoline was released into the ground from the new system continuously at a rate of at least several gallons each time the tank was

---

[1]The plaintiff also named as defendants the other five companies which it claimed were responsible for contaminating its property. Three of the defendants settled prior to trial. Default judgments were entered against the other two defendants. None of those parties is involved in this appeal.

filled. These releases took place from November, 1987, when the system was first installed, through March, 1988, when the leak was discovered. On December 31, 1987, the defendant delivered gasoline to the site and pumped the gasoline from its delivery truck into the underground tanks. As the driver disconnected the hose from the fill pipe, gasoline that remained in the overfill protector, between one and ten gallons, spilled onto the station's pavement. Several weeks after the release, local officials detected gasoline fumes emanating from the sewers adjacent to the site and required the plaintiff to conduct an assessment of the property.

At the close of the evidence the judge submitted the case to the jury on the form of a special verdict. Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). In response to written questions the jury answered "yes," the defendant did cause a release of gasoline on the premises, but answered "no," the defendant's release did not cause the plaintiff to incur response costs. Prior to the jury's deliberations, the judge instructed on the issue of causation. The judge informed the jury that "[the defendant's] liability depends entirely upon whether it caused a release of [gasoline at] the site and whether such release resulted in the incurrence of response costs by [the plaintiff]." The judge further stated that "[t]he relevant, factual inquiry in determining whether or not a release — if a release occurred — resulted in the incurrence of response costs should focus on whether the particular hazard that was caused by such release justified any response actions." In further instructing the jury, the judge stated: "If the defendant establishes by a preponderance of the evidence that none of the plaintiff's costs or damages are attributable to a release by the defendant, then the plaintiff is not entitled to recover any costs from the defendant." We conclude that the instructions were not erroneous, and they adequately informed the jury of the relevant law and legal standard required under G. L. c. 21E.

The plaintiff argues that the judge's instruction placed an unreasonable burden on the plaintiff to pinpoint which particular response costs were attributable to the defendant's re-

lease, especially in a case such as this where there were multiple releases of gasoline on the property.[2] This argument is without merit.

General Laws c. 21E, § 4 (1992 ed.), provides in part: "Any person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action." The statute further defines the persons who are liable for releases. Section 5 (*a*) (5) (iii) states: "[A]ny person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, shall be liable, without regard to fault . . . (iii) to any person for damage to his real or personal property *incurred or suffered as a result of such release . . .*" (emphasis supplied). We have held that a defendant can be held liable under § 5 (*a*) (5) if it is found to have "caused" a release of oil at the site. *Griffith* v. *New England Tel. & Tel. Co.*, 414 Mass. 824, 829-830 (1993). See *Wellesley Hills Realty Trust* v. *Mobil Oil Corp.*, 747 F. Supp. 93, 96 (D. Mass. 1990). We have stated that there must be a "causal link" between the spill and the contamination of the site. *Providence & Worcester R.R.* v. *Chevron U.S.A. Inc.*, 416 Mass. 319, 322-323 (1993). Therefore, the plaintiff must show some causal relationship between the release for which the defendant is responsible and the response costs incurred. Requiring the plaintiff to prove a causal connection between the defendant's release and the response costs incurred is not unreasonable even in multiple release cases. The plaintiff is not required to

---

[2]The plaintiff argues that we should follow the Federal courts in their interpretation of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601 et seq. (1988) and adopt a "diminished causation" standard in multi-release cases. It is not necessary for us to go beyond the language of G. L. c. 21E (1992 ed.) to determine whether the jury were adequately instructed. It should be noted that CERCLA has no provision equivalent to G. L. c. 21E, § 5 (*a*) (5).

pinpoint each cost which is attributable to a particular defendant's release, but instead is only required to prove that the defendant's release resulted in some response costs. Once the plaintiff establishes that the release caused by the defendant resulted in response costs then the burden shifts to the defendant to prove what portion of the plaintiff's response costs are attributable to the release which the defendant caused. See G. L. c. 21E, § 5 (*b*).[3] In this case, the judge's instructions correctly informed the jury that, in order to recover response costs pursuant to § 4 of G. L. 21E, from a defendant, allegedly liable under § 5 (*a*) (5), a plaintiff must prove that the defendant caused a release of hazardous material at the site and that release caused the incurrence of response costs. The judge also correctly informed the jury that the defendant has the burden of proof with respect to what portion of the plaintiff's response costs are attributable to the release it caused.

After being properly instructed by the judge, the jury found that the defendant's release did not cause the plaintiff to incur any response costs and therefore, it follows that the defendant was not liable under G. L. c. 21E, § 4. Because there was no error in the jury instructions, there is no reason to question the validity of the jury's verdict.

*Judgment affirmed.*

---

[3]General Laws c. 21E, § 5 (*b*), provides: "Any person otherwise liable for any costs or damages . . . who establishes by a preponderance of the evidence that only a portion of such costs or damages is attributable to a release or threat of release of such oil or hazardous material . . . shall be required to pay only for such portion."