Fabricant, J.
Introduction
This action presents the plaintiff bank’s claims, pursuant to G.L.c. 2IE, for reimbursement for costs it incurred in responding to contamination on property it acquired by foreclosure. The defendants are two former owners of the property. Presently before the Court are the defendants’ motions to dismiss and/or for summary judgment; each defendant contends that the complaint fails to state a claim on which relief may be granted against that defendant, and that even if the complaint states a claim, the bank has no reasonable prospect of proving the essential elements of liability against that defendant. Each defendant submits affidavits in support of the latter contention, and also relies on affidavits submitted by all parties in connection with an earlier unsuccessful motion by the bank for attachment of the defendants’ real estate. [5 Mass. L. Rptr. 413 (1996).] The bank contends that the complaint states sufficient allegations against each defendant, and that it cannot properly respond to the defendants’ summary judgment motions until after further discovery is completed. For the reasons stated herein, I conclude that the complaint must be dismissed for failure to state a claim against either defendant, with leave granted to the plaintiff to file an amended complaint within 30 days. Accordingly, I do not consider the materials submitted in support of the defendants’ motions for summary judgment.
The Allegations of the Complaint
The complaint makes the following allegations: The site is located at 38 Lancaster County Road in the town of Harvard (¶1). Another property on the other side of Lancaster County Road, which the complaint terms “the abutting property,” is upgradient from the site (¶4). In 1961, the defendant Ernst became the owner of both the site and the abutting property (¶5). Her predecessors, Warren and Julia Ernst, had operated “Harvard Home Heating Oil Service” at the site, storing fuel in on-site underground storage tanks, and also operated gasoline pumps for the sale of gasoline to the public on the abutting property (914). The defendant Ernst “owned and operated” both properties until “approximately April 1976" (¶5). For some part of this time her ownership was joint with Warren Ernst (915).[1]
Defendant Taveras purchased the site and the abutting property on April 26, 1976, and “owned and operated” both properties until August 23, 1983 (916). On that date Taveras sold the site to Robert and Patsy Bell, to whom the bank lent money for the purchase (917). The Bells defaulted, and on November 25, 1991, it foreclosed on the Bells’ mortgage and became the owner of the site (¶7). Taveras “continues to own and operate” the abutting property (¶6).
In October 1993, in connection with a proposed resale of the site, the bank had a 2,000 gallon underground storage tank removed (918). In the course of this project, the bank “discovered” eight other underground storage tanks, with a total capacity of approximately 18,000 gallons, along with “substantial oil contamination in the surrounding soil” (¶9). In approximately October 1994, the bank “discovered” “1,2 dichloroethane (’DCEj and other chemicals” in the groundwater at the site (¶10). The complaint identifies DCE as “a common degreaser” (¶10).
The complaint’s allegations regarding the origin of the contamination consist of the following. The complaint alleges that “on information and belief, either the DCE was released in the defendants’ operations on the site, or it was released in their operations at the abutting property and migrated in the groundwater to the site” (¶10). On this basis, the complaint alleges that “Dr. Taveras and/or Mrs. Ernst is responsible for the DCE contamination” under G.L. 2IE, §5(a)(l) or 5(a)(2) (¶13). As to the oil, the complaint alleges that “either Mrs. Ernst or Dr. Taveras abandoned the USTs on the site,” and that “the defendant who did so is responsible for the oil contamination” under G.L.c. 21E, §5(a)(l) (9112). The complaint further alleges that “the defendants failed to properly maintain the USTs or otherwise negligently permitted the releases of oil and DCE at the site” (¶14). From this, the complaint *187 concludes, “they caused or are otherwise legally responsible for those releases” under G.L.c. 21E, §5(a)(5) (¶14).
Discussion
When evaluating the sufficiency of a complaint pursuant to Mass.RCiv.P. 12(b)(6), the court must accept as true the well pleaded factual allegations of the complaint, as well as any inference which can be drawn therefrom in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. The court need not, however, accept as true mere conclusory allegations, nor can such conclusions substitute for allegations of fact necessary to state a claim. Cheney v. Automatic Sprinkler Corp. of America, 377 Mass. 141, 149-50 (1979); see also Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir.), cert. denied, 483 U.S. 1021 (1987).
General Laws c. 2IE, §5(a)(l) imposes liability on the “owner or operator of a . . . site from or at which there is or has been a release of oil or hazardous material.” The Supreme Judicial Court has held that this provision is limited to present owners or operators of the site; past ownership is not sufficient to state a claim under §5(a)(l). Griffith v. New England Telephone & Telegraph Co., 414 Mass. 824, 827 (1993) (Griffith 1). The allegations of the complaint make it clear that neither defendant presently owns or operates the site.
The allegation that “either Mrs. Ernst or Dr. Taveras abandoned the USTs on the site” apparently is intended to invoke §2 (a) (3), which defines “owner or operator” to include, “in the case of an abandoned site, any person who owned or operated such site immediately prior to such abandonment.” The statute does not define “abandoned site.” In Griffith I the SJC considered several possible sources of definition. It did not expressly adopt any, but it did clearly reject the idea that to abandon is merely “to give up by leaving or ceasing to operate.” 414 Mass. at 827. Equally clearly, the SJC held that “[m]ere nonuse or sale of property does not, by itself, constitute an abandonment.” 414 Mass. at 829, quoting Derby Ref. Co. v. Chelsea, 407 Mass. 703, 709 (1990).
In its argument with respect to the defendants’ summary judgment motions, the bank contends that one or the other defendant abandoned the USTs by ceasing to use them and failing to disclose their existence to the subsequent owner. Under each of the various possible definitions the SJC cites in Griffith I, there would be considerable room for doubt as to whether such conduct could be enough for abandonment.[2] For purposes of the present motions, however, it is sufficient to note that the complaint simply does not allege any such facts. Putting aside for the moment the disjunctive phrasing, all the complaint alleges is the conclusion that either of the defendants “abandoned the USTs”; it does not allege, even in disjunctive form, any action by either of them that arguably could constitute abandonment, even under the plaintiffs broad definition, nor does it allege any facts on the basis of which the site could be characterized as “abandoned.”
The disjunctive phrasing takes the bank’s conclusory allegation even further from stating a claim. As to each defendant, the complaint does not allege, even in conclusory form, that that defendant abandoned the site. The reason for the bank’s hedging is obvious; both defendants cannot have abandoned the tanks, and the bank prefers to keep its options open as long as possible. Each defendant, however, is entitled to notice at the pleading stage of the claim alleged against him or her, and the bank’s disjunctive conclusory allegation fails to provide such notice.
The bank seeks to rely on an “alternative liability” theory, by analogy to market share liability in defective products cases. For this theory the bank cites Payton v. Abbott Labs., Inc., 386 Mass. 540 (1982). In that case, the SJC rejected the application of market share liability, but left open the prospect that it might permit such an approach “in appropriate circumstances.” 386 Mass. at 574. The bank cites no case since Payton in which a Massachusetts appellate court has approved the application of such a theory. Moreover, the bank’s allegations in this case do not meet the requirements imposed by courts that have recognized an alternative liability theory, since the bank has not joined all possible defendants. See Zands v. Nelson, 797 F.Supp. 805, 813 (S.D. Cal. 1992).[3] On the facts as alleged, if anyone is an “owner or operator” of the site by virtue of having abandoned it, it is as likely to be the Bells as it is to be either of these defendants, yet the bank has chosen not to join them. Thus, the complaint fails to state a claim under G.L.c. 2 IE, §5(a)(l).
Under G.L.c. 2IE, §5(a)(2), liability is imposed on “any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release.” See Griffith I, 414 Mass. at 829. “Hazardous material" does not include oil. G.L.c. 21E, §2. By its terms, this provision is limited to the owner or operator of the site at a time when the hazardous material was stored or disposed of. Thus, to state a claim against either defendant for the DCE contamination under this provision, the complaint would have to allege that DCE was stored or disposed of on the property during the period of that defendant’s ownership. But the complaint contains no such allegation, as to either defendant. The closest it comes is the last sentence of ¶10, alleging that “On information and belief, either the DCE was released in the defendants’ operations on the Site, or it was released in their operations at the Abutting Property and migrated in the groundwater to the Site.” That sentence is so indirect, so qualified (“on information and belief,” *188 “either . . . or”), and so ambiguous as to whether it refers to one defendant, the other, or both, that it avoids actually alleging any fact regarding either defendant. Thus, the complaint fails to state a claim under §5(a)(2).
Section 5(a)(5), finally, imposes liability on a person who “caused or is legally responsible for” a release of oil or hazardous waste. The SJC has made it clear that this provision requires actual proof not only that a particular defendant caused a release, but that that release caused the contamination. Marenghi v. Mobil Oil Corp., 420 Mass. 371, 374 (1995); Griffith v. New England Telephone & Telegraph Co., 420 Mass. 365, 369 (1995) (Griffith II); John Beaudette, Inc. v. J.P. Noonan Transportation, Inc., 419 Mass. 311, 314 (1995). In Griffith II, supra, the SJC reversed a judgment of liability against a former lessee of the site who had installed and used underground storage tanks, despite a finding that the tanks caused the contamination, because “there was no evidence of how or exactly when that contamination occurred,” so that it could not be linked to any breach of duty by the defendant.
Here, the only allegation in the complaint that relates in any way to conduct of either defendant is ‘1114, alleging that “the defendants failed to properly maintain the USTs or otherwise negligently permitted the releases.” The sentence is again ambiguous as to whether it is directed against one or the other defendant or both. The complaint is silent as to the nature of the failure of proper maintenance, or other negligence, as to when it occurred, and as to any causal connection between it and any release, or between such release and the contamination. Thus, this allegation too is no more than a legal conclusion, and the complaint fails to state a claim under §5(a)(5).
In essence, the plaintiffs complaint appears to be premised on a hunch, based solely on the presence of the contamination on the site, that one or the other of these two former owners must have acted in such a way as to be liable, and that evidence of such conduct will turn up in discovery. The hunch may happen to be correct, or it may not, but such a hunch is not enough to provide the basis for a complaint.[4] The plaintiff is not entitled to impose on a defendant the substantial economic and other burdens of discovery until it has information sufficient to provide a good faith basis for alleging against that defendant facts sufficient to state a claim. See Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). It may be, however, that the plaintiff is in a position to allege additional facts that would make the complaint sufficient against one or both defendants. If so, the plaintiff may file an amended complaint within 30 days.
Order
For the reasons stated herein, the complaint is DISMISSED for failure to state a claim on which relief may be granted against either defendant. Plaintiff is granted leave to file an amended complaint within 30 days.

The complaint does not actually allege that the defendant Ruth Brown Ernst herself ever operated the “Harvard Home Heating Oil Service.” Paragraph 4 says that “On information and belief the Ernsts continued” that company’s business “under their own name” until approximately 1967, but the only Ernsts identified in paragraph 4 are Warren and Julia. Nevertheless, it is clear from the materials submitted in support of her summary judgment motion that Ruth Brown Ernst did operate the business, at least for some part of the period of her ownership of the property. It is similarly clear from the summary judgment materials that defendant Taveras did not operate that business or any business on the site or on the abutting property.

The bank relies on Fraga v. R.H. Wyner Associates, Inc., Norfolk Superior Court No. 92-0210. There a Superior Court judge granted summary judgment in favor of a defendant who was alleged to have sold the site without disclosing the existence of underground storage tanks, but denied summary judgment in favor of a defendant who was alleged to have left the tanks unused over a period of years, despite knowledge of their existence. Here, the plaintiffs (un-alleged) theory of abandonment based on non-disclosure appears closer to the facts relating to the defendant in whose favor the Court granted summary judgment in Fraga

The bank cites two Superior Court decisions allowing plaintiffs to get past the summary judgment stage on a market share theory, Russo v. Materiel Handling Specialities Co., Norfolk Superior Court No. 91-1209, 4 Mass. L. Rptr. 288, and Mahar v. Hanover House Industries, Inc., Berkshire Superior Court No. 88-0156, 5 Mass. L. Rptr. 234. In both those cases, all manufacturers of the allegedly defective product were joined, so that the court could be certain of having the actual tortfeasor before it. In Fraga v. R.H. Wyner Associates, Inc., cited supra the Superior Court declined to allow the plaintiff to proceed on a theory of alternative liability in a c. 2 IE case.

As noted supra the oil tanks may have leaked during the Bells’ ownership, during the bank’s ownership prior to the removal, or during the process of removal. The DCE may have been released during the Bells’ ownership, or may have migrated into the groundwater from an entirely unrelated source.