JOHN GRIFFITH & another,[1] trustees, *vs.* NEW ENGLAND
TELEPHONE & TELEGRAPH COMPANY.

No. 90-P-1106.

Middlesex. December 17, 1991. - February 7, 1992.

Present: PERRETTA, JACOBS, & GILLERMAN, JJ.

Further appellate review granted, 413 Mass. 1104 (1992).

*Massachusetts Oil and Hazardous Material Release Prevention Act. Hazardous Materials. Release.*

Section 5(*f*) of G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act, permits the parties to a real estate transaction, by a contract between them, to allocate payment of environmental cleanup liabilities that the act imposes. [82-84]

A letter agreement between the lessor and the lessee of certain premises was intended only to release the lessee from the final two weeks of its obligations under the lease, and was not intended to release the lessor's claim against the lessee for environmental cleanup costs imposed by G. L. c. 21E. [84]

CIVIL ACTION commenced in the Superior Court Department on July 11, 1988.

The case was heard by *Robert H. Bohn*, J.

*Pamela A. Smith* for the defendant.

*Robert F. Sylvia* for the plaintiffs.

GILLERMAN, J. This controversy between the plaintiffs, the owners of 959 Concord Street in Framingham (the property), and the defendant, the lessee of the property, requires us to consider certain provisions of G. L. c. 21E, the so-called Superfund law (the Act). The underlying issue is whether the parties to a commercial real estate transaction may, by a contract between them, allocate payment of liability imposed by the Act for the release of hazardous waste.

The material facts found by the judge, after a bench trial which included a detailed stipulation of facts, are largely undisputed. The defendant occupied the property under written leases from 1958 to January 17, 1984. In April, 1958, the

---

[1]Mark M. Kisiel. Messrs. Griffith and Kisiel are the trustees of the Commonwealth Center Trust.

then owner of the property installed three underground fuel tanks, two for gasoline storage and one for fuel oil storage. The defendant operated a garage and testing facility on the property, and the underground tanks were used exclusively by the defendant throughout the entire period of its tenancy. Gasoline and oil brought onto the property and stored in the underground tanks were purchased by the defendant for its own use.

The defendant's lease expired on January 31, 1984, but the parties agreed that the plaintiffs would accept the defendant's surrender of the property on January 17, 1984. Their agreement is set forth in the following letter to the defendant from the plaintiffs, dated January 16, 1984:

> "It is the understanding of the undersigned that you have at this point completely vacated the building formerly occupied by you at 959 Concord Street, Framingham, Massachusetts.
>
> The building, as you know, was leased by New England Telephone company from Commonwealth Center Trust, which lease expires on January 31, 1984. Since you are no longer in possession of this building, Commonwealth Center Trust will be pleased to release you from any further responsibility and future economic liability on the property as of January 17, 1984. If you so agree, please execute a copy of this letter, as provided below, and return to me.
>
> Sincerely yours,
>
> John B. Griffith, Trustee
> Commonwealth Center Trust
>
> New England Telephone Company hereby agrees to the terms of the lease between New England Telephone Company and Commonwealth Center Trust as of January 17, 1984
>
> s/_____
> District Manager-Real Estate Operations"[2]

---

[2]The paragraph signed by the defendant appears to contain a typographical error. As it stands the paragraph makes little sense without changing the phrase, "agrees to the *terms* of the lease . . . as of January 17, 1984,"

The judge found that in early 1984, after the defendant vacated the property, the building that had been used for storage and testing was demolished, and the three fuel tanks used for the storage of gasoline and oil that had been buried in 1958 were excavated and removed. He also found that none of the three tanks showed any signs of leakage. The property was then fenced off and left vacant for approximately two years. In 1986 two areas of petroleum contamination were discovered near the oil and gasoline tanks used by the defendant. The judge found, on sufficient evidence, that the contamination occurred between 1958 and 1984 and that the source of the contamination was the oil and gas that the defendant had brought onto the property. The plaintiffs notified the Department of Environmental Quality Engineering (now the Department of Environmental Protection), see G. L. c. 21E, § 7, cleaned up the site, and incurred expenses of $461,266 in doing so. The plaintiffs sought by this action to recover those expenses from the defendant. The judge found for the plaintiffs, and we affirm the judgment.

General Laws c. 21E, § 4, third par., creates a private right of action in favor of any person who undertakes the removal of oil or hazardous material, and such person is entitled to the reimbursement of its reasonable costs from the person liable for the contamination. The judge ruled that the defendant was a "person liable," without regard to fault, under the provisions of G. L. c. 21E, § 5(a)(1), as inserted by St. 1983, c. 7, § 5, because it was the "operator of . . . a site from or at which there is or has been a release . . . of oil or hazardous material." See *Acme Laundry Co.* v. *Secretary of Envtl. Affairs*, 410 Mass. 760, 765 (1991). The defendant, relying on *Wellesley Hills Realty Trust* v. *Mobil Oil Corp.*, 747 F. Supp. 93, 96 (D. Mass. 1990), argues that the judge was wrong because § 5(a)(1) applies only to present owners or operators of property, not past owners or operators. We disagree. General Laws c. 21E, § 2, defines "owner" or "operator" to include, "in the case of an abandoned site, any

to the phrase "agrees to the *termination* of the lease . . . as of January 17, 1984."

person who owned, operated, or otherwise controlled activities at such site immediately prior to such abandonment." "Site" is defined in § 2 to include "any building, structure, installation, equipment . . . or any other place or area where oil or hazardous material has been deposited, stored, disposed of or placed, or otherwise come to be located." Section 2 does not define "abandoned," but the word is in common usage and means, inter alia, "to give up by leaving or ceasing to operate. . . ." The American Heritage Dictionary, Second College Edition 66 (1982). Although the judge made no express finding with regard to abandonment, he did find that the defendant vacated the property and ceased operations on January 17, 1984, and that the site was not thereafter used for the storage of oil and gasoline. From these findings it is clear that the defendant was the operator of the property immediately prior to its abandonment as a site for the storage of oil and hazardous material. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 475 (1991). We reject the defendant's suggestion that we somehow transplant to G. L. c. 21E the definition of "abandoned *property*," appearing in G. L. c. 60, § 1, a chapter of the General Laws having to do with the collection of local taxes, for the reason, if no other, that the phrase "abandoned property" does not appear in G. L. c. 21E.

The principal argument of the parties focused on whether the January 16 letter, properly construed, released the plaintiffs' claim, but there is the threshold question whether § 5(*f*) of the Act *permits* the release of the private right of action. If the release is ineffective regardless of its particular terms, the plaintiff must prevail.[3]

Section 5(*f*), as inserted by St. 1983, c. 7, § 5, reads in full as follows:

> "No indemnification, hold harmless, or similar agreement or conveyance shall be effective to *transfer* from

---

[3]The views we expressed with regard to § 5(*f*) in *Sheehy* v. *Lipton Indus., Inc.*, 24 Mass. App. Ct. 188, 197 (1987), were "essentially preliminary guidance . . . on facts largely unknown . . . ." *Id.* at 199 n.10.

the owner or operator of any vessel or site or from any person who may be liable for a release or threat of release of hazardous material under this section, to any other person the liability imposed under this section. Nothing in this paragraph shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section" (emphasis added).

The subject matters of the two sentences are different. The first sentence prohibits the *transfer* of any liability created by § 5, while the second sentence permits agreements that insure, hold harmless, or indemnify a party that is so liable. A person once liable to the Commonwealth, for example, remains liable, but he or she may cover that liability by an appropriate agreement. "[T]he language of the statute is the principal source of insight into the legislative intent . . . ." *Acme Laundry Co.* v. *Secretary of Envtl. Affairs, supra* at 770. For an illustration of an insurance agreement, see *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 701 (1990).

"[I]n enacting G. L. c. 21E, the Legislature envisioned a State environmental protection program that would parallel the Federal plan codified in CERCLA [Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 et seq.]." *Acme Laundry Co.* v. *Secretary of Envtl. Affairs, supra* at 781 (O'Connor, J., dissenting). Chapter 21E, including § 5(*f*), was enacted in 1983, three years after CERCLA, and the provisions of § 5(*f*) are virtually identical to the comparable provisions in CERCLA, 42 U.S.C. § 9607(e)(1) (1988). That being so, we shall construe § 5(*f*) consistently with the Federal decisions "absent compelling reasons to the contrary or significant differences in content." *Rollins Envtl. Servs., Inc.* v. *Superior Court*, 368 Mass. 174, 180 (1975).

In *Mardan Corp.* v. *C.G.C. Music, Ltd.*, 804 F.2d 1454 (9th Cir. 1986), the court considered a general release of "all actions, causes of action, [and] suits," and held that the effect of the instrument was to shift the responsibility for pay-

ment of cleanup costs. "Such agreements cannot alter or excuse the underlying liability, but can only change who ultimately pays that liability." *Id.* at 1459. See *Smith Land & Improvement Corp.* v. *Celotex Corp.*, 851 F.2d 86, 89 (3d Cir. 1988) ("agreements to indemnify or hold harmless are enforceable between the parties but not against the government"); *Chemical Waste Mgt., Inc.* v. *Armstrong World Indus., Inc.*, 669 F.Supp. 1285, 1294-1295 (E.D. Pa. 1987) (the statute "authorizes indemnity agreements between owner/operators and generators"). *Hays* v. *Mobil Oil Corp.*, 736 F. Supp. 387, 393 (D. Mass. 1990), aff'd in part and vacated in part, both on other grounds, 930 F.2d 96 (1st Cir. 1991) ("indemnification clauses are still permitted to allocate the burdens of risks and costs among otherwise liable parties"). See generally Ryan, The Superfund Dilemma: Can You Ever Contract Your Liability Away?, 75 Mass. L. Rev. 131 (1990). We conclude that § 5(*f*) permits agreements that have the intended effect of allocating payment of liabilities arising under the Act, and we proceed to apply traditional common law principles in construing the letter of January 16, 1984.

The January 16 letter is not the familiar general release of all claims and causes of action, and it makes no reference to claims arising under the Act which, as noted above, was passed by the Legislature the preceding year. While the letter is a "release" from "future economic liability on the property," the release is in the context of a surrender of a leasehold interest before the end of the lease term. The affirmation of the letter signed by the defendant refers only to the termination of the lease between the parties as of January 17, 1984. See note 2, *supra.* These observations, combined with the judge's finding, not clearly erroneous, see *MacDonald* v. *MacDonald*, 291 Mass. 299, 302 (1935), that the letter "was intended only to release . . . [the defendant] from the final two weeks of its obligations as lessee of the property," persuade us that the claims of the plaintiff are not barred by the letter.

*Judgment affirmed.*