JOHN B. GRIFFITH & another,[1] trustees,[2] *vs.* NEW
ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

Middlesex. February 9, 1995. - May 16, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Massachusetts Oil and Hazardous Material Release Prevention Act. Hazardous Materials.*

In an action brought pursuant to G. L. c. 21E, the Massachusetts Oil and Hazardous Material Release Prevention Act, seeking recovery of cleanup costs incurred as a result of the release of pollutants that caused contamination, the plaintiffs did not demonstrate either that the defendant was legally responsible for the release [367-368] or that the defendant's conduct caused the contamination [369-370], within the meaning of G. L. c. 21E, § 5 (*a*) (5); the judge should have ordered summary judgment in favor of the defendant.

CIVIL ACTION commenced in the Superior Court Department on July 11, 1988.

Following the decision of this court in 414 Mass. 824 (1993), the case was reconsidered by *Robert H. Bohn,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Pamela A. Smith* for the defendant.

*Robert F. Sylvia* (*Susan Raitt* with him) for the plaintiffs.

LYNCH, J. The plaintiffs' action under G. L. c. 21E (1992 ed.), the Massachusetts Oil and Hazardous Material Release Prevention Act, against the defendant was previously before us. See *Griffith* v. *New England Tel. & Tel. Co.,* 414 Mass. 824, 825-827 (1993) (*Griffith I*). There a judge in the Superior Court had held that the defendant was the "operator of

---

[1]Mark M. Kisiel.

[2]Of the Commonwealth Center Trust.

. . . a site from or at which there is or has been a release . . . of oil or hazardous material," and ordered the defendant to pay the plaintiffs $461,266 for cleanup costs. See G. L. c. 21E, § 5 (*a*) (1). The Appeals Court affirmed. *Griffith* v. *New England Tel. & Tel. Co.*, 32 Mass. App. Ct. 79, 82 (1992). After granting further appellate review, we determined that the defendant was not a "person liable" under § 5 (*a*) (1). We then remanded the case to the Superior Court for further findings on the issue whether the defendant could be liable under § 5 (*a*) (5) as a "past owner or operator of a site contaminated by oil . . . that . . . 'caused' a release or threat of release of oil from the site." *Griffith I, supra* at 830. On remand, the Superior Court judge heard no new evidence, and after reviewing the briefs submitted by the parties on the issue of causation, again entered judgment for the plaintiffs. The defendant filed a timely appeal and we transferred the case to this court on our own motion. We now reverse.

General Laws c. 21E, § 5 (*a*), sets out five categories of persons responsible for response costs incurred as the result of releases that result in contamination.[3] If a person falls into any of these five categories, the statute imposes liability "without regard to fault." Three of these categories only apply to releases of hazardous materials other than oil. The

[3]General Laws c. 21E, § 5 (*a*) (1992 ed.), states in pertinent part: "Except as otherwise provided in this section, (1) the owner or operator of a vessel or a site from or at which there is or has been a release or threat of release of oil or hazardous material; (2) any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material; (3) any person who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material; (4) any person who, directly, or indirectly, transported any hazardous material to transport, disposal, storage or treatment vessels or sites from or at which there is or has been a release or threat of release of such material; and (5) any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, shall be liable, without regard to fault."

categories from which petroleum releases have been excluded affix liability to a person responsible for a release of hazardous materials if that person: (1) was a prior owner of a tank or a site where the hazardous materials were being stored (§ 5 [a] [2]); (2) arranged for the storage or the transportation of the hazardous materials (§ 5 [a] [3]); or (3) actually transported or stored the hazardous materials in the tank or at the site (§ 5 [a] [4]). The other two categories pertain to both releases of oil and releases of hazardous materials and apply when a person is either (1) a present owner of the tank or the site where the release occurred (§ 5 [a] [1]), or (2) actually caused or is legally responsible for the release of oil (§ 5 [a] [5]). Since this case involves a release of oil, we look to the last two categories to determine whether the defendant is responsible for the response costs incurred.

We decided in *Griffith I, supra* at 829, that the defendant was not a present owner of the site or the tank, and therefore, could not be a person liable under § 5 (a) (1). Therefore, to be successful, the plaintiffs must demonstrate that the defendant either caused the contamination or was legally responsible for the contamination.

1. *Legal responsibility.* The plaintiffs argue that the defendant had "express duties" under the lease to maintain the underground tanks. The lease provides that the defendant, as lessee, is responsible for keeping the leased "premises" in good repair and for maintaining the grounds of the leased "premises."[4] However, the lease specifically defines the term "premises" as a designated area of land and a specific building without making any reference to the underground tanks.[5]

---

[4]The provision is as follows: "Lessee shall be responsible for keeping the leased premises in good order and repair, provided such work is not necessitated because of fire or other casualty, or because of conditions or occurrences outside the leased premises or because of the negligence of Lessor or his failure to perform his obligations hereunder. Lessee shall also be responsible for the maintenance of the grounds including parking areas, driveways and walks and for the removal of snow therefrom."

[5]The lease described the following premises: "Approximately 124,500 square feet of land and the entire building thereon, said building containing approximately 33,740 square feet of floor space and situated on the

There is nothing within the four corners of the lease that makes the term "premises" ambiguous. Cf. *Siegel* v. *Terminal Realty Corp.*, 350 Mass. 779, 780 (1966) (discussing lease ambiguity concerning discrepancy as to area leased and use of parol evidence); *LaCouture* v. *Renaud*, 325 Mass. 33, 36-37 (1949) (discussing use of circumstances attending execution of the lease to determine parties' intent with respect to area demised in lease when description of leased premises contained latent ambiguity). Therefore, the lease does not appear to impose any "express duties" on the defendant with regard to the tanks. The plaintiffs argue, however, that it would be illogical to conclude that the tanks were not part of the leased "premises" given that: (1) the defendant was the exclusive user of the tanks throughout its twenty-six year tenancy; (2) the defendant purchased, transported, and used all of the oil and gasoline stored in the tanks; (3) the tanks were installed for, and used exclusively by, the defendant; and (4) a witness testified that he considered the tanks to be part of the leased premises.[6]

This evidence established what no one disputes, that the defendant had the right to use the tanks installed by the previous owner. It does not establish, however, that the defendant had the obligation to maintain the tanks under a lease provision which requires the defendant to maintain the "premises" where the term "premises" is specifically defined and makes no mention of the tanks or other underground facilities.[7]

---

easterly side of Concord Street approximately 500 feet south of its intersection with Old Connecticut Path . . . ."

[6]This witness was an employee of the defendant, in charge of "the building, [and] leasing activity" at the site. When asked on direct examination whether he considered the underground tanks to be part of the leased premises, the witness responded, "yes."

[7]Even if we concede for the purpose of argument that the defendant was obligated under the lease to maintain the tanks, there is no evidence in the record before us that the defendant failed to maintain the tanks properly, or that the tanks contaminated the site as a result of improper maintenance, if any, during the term of the lease.

2. *Causation.* As previously stated, the judge below held that the defendant was liable under § 5 (*a*) (5), because the defendant caused the release. The defendant now argues that the judge's finding that it "caused" the contamination was erroneous because the finding was based on the defendant's status, rather than on its conduct. We have stated that, to impose liability under § 5 (*a*) (5), actual proof of causation is needed, rather than mere evidence of site operation or ownership. See *Griffith I, supra* at 830 (evidence that defendant brought oil and gasoline onto property insufficient to establish that defendant caused contamination); *Marenghi* v. *Mobil Oil Corp.*, 416 Mass. 643, 647 (1993), *S.C., post* 371, 374 (1995) (discussing essentials of establishing liability under § 5 [*a*] [5]). Furthermore, it is clear from the statute's different treatment of petroleum releases that there must be more than a showing that the defendant previously owned the site, brought oil onto the property, or stored oil on the property to establish causation under § 5 (*a*) (5). Had the Legislature intended otherwise, there would be no reason it could not have done so by inserting the word "oil" into the petroleum exclusion categories, rather than creating an entirely separate category for petroleum releases which imposed liability on a finding of causation or legal responsibility.

Although the judge found, based on expert testimony, that the underground tanks caused the site contamination, there was no evidence of how or exactly when that contamination occurred. Absent some duty on the part of the defendant to prevent contamination of the site from the tanks, the judge's finding adds nothing to the case that was previously before us in *Griffith I.* To impose liability under § 5 (*a*) (5), a plaintiff must establish both that the defendant caused the release and that the release caused the contamination. *Providence & Worcester R.R.* v. *Chevron U.S.A. Inc.*, 416 Mass. 319, 324 n.3 (1993). See *John Beaudette, Inc.* v. *J.P. Noonan Transp., Inc.*, 419 Mass. 311, 313, 315 (1995). Even if we accept, as we must, that the tanks caused the contamination, it is by no means clear that this occurred during the period

of the defendant's lease. The judge found that the contamination was not discovered until two years after the termination of the defendant's tenancy. Furthermore, the parties stipulated that, when the tanks were removed, there was no sign of contamination on the premises. Under these circumstances, evidence that the defendant was a prior lessee is clearly insufficient, by itself, to hold the defendant liable under § 5 (*a*) (5). Instead, there must be some showing that the defendant's conduct caused the contamination.[8]

Therefore, the judgment is reversed and the case is remanded to the Superior Court for the entry of judgment for the defendant.

*So ordered.*

---

[8]The plaintiffs rely on *Zezuski* v. *Jenny Mfg. Co.*, 363 Mass. 324 (1973), as support for its contention that the defendant caused the site contamination. In *Zezuski*, the defendant was pumping gasoline into the plaintiff's gasoline tanks when a fire of unexplained origin occurred. Even though there was no direct evidence of what actually caused the fire, this court used the doctrine of res ipsa loquitur to uphold the jury verdicts returned in favor of the plaintiff. This court opined that the jury could have reasonably inferred that a fire of unexplained origin would not have occurred absent some negligence on the part of the defendant who was found to be in exclusive control of the instrumentalities that caused the fire. *Id.* at 332. In this case, there was no finding that the defendant was in "exclusive control" of the tanks that caused the release, or any evidence of exactly when the damage occurred. Therefore, we believe that the plaintiffs' reliance on *Zezuski* is misplaced given that the *Zezuski* decision was based on the defendant's control of the tank and accoutrements that caused the fire.