Burnes, J.
INTRODUCTION
This action was commenced by plaintiff Domestic Loan and Investment Bank (the “Bank”) to recover costs it incurred in responding to contamination on property[1] it acquired by foreclosure and which, prior to the owners whose interest was foreclosed, was owned by the two defendants. The claims against defendant Juan M. Tavares (‘Tavares”) have been dismissed as have certain claims against defendant Ruth Brown Ernst (“Ernst”). Ernst has now moved for partial summary judgment on the claims remaining against her and on Counts I and II of her counterclaim against the Bank.[2] For the reasons set out in this opinion, the motion for partial summary judgment is ALLOWED and the Counts I and II of the Counterclaim are DISMISSED.*
PROCEDURAL HISTORY
This case has a tortured procedural history which is necessary to recapitulate, primarily so that it is clear what the court is relying on in making its decision and why.
The complaint was filed on June 17, 1996. Thereafter, Ernst and Tavares moved to dismiss. This motion was allowed by Judge Fabricant on November 25, 1996 for failure of the Bank to state a claim against either defendant [6 Mass. L. Rptr. No. 9, 186 (January 27, 1997)]. The court granted the Bank 30 days to amend its complaint to attempt to state a claim. The Bank then filed an Amended Complaint on December 24, 1996, and the defendants again moved to dismiss. Before this second motion was heard, the Bank moved on February 28, 1997, less than one week before the hearing scheduled on the defendants’ motions to dismiss, on an “emergency” basis and ex parte, to file a Second Amended Complaint. This motion was allowed by the court.
As to Tavares’ motion, Judge Fabricant concluded that the amendments to the complaint had not cured its deficiencies and dismissed the action against him. As to Ernst’s motion, by order dated March 10, 1997, Judge Fabricant concluded that the amendments had not cured the deficiencies with respect to the claims against Ernst under G.L.c. 21E, §5(a)(l) or under G.L. *468 2IE, §5(a)(2) but had managed to state a claim for liability against Ernst under G.L.c. 2IE, §(5)(a)(5) for oil contamination (the “Section 5(a)(5) claim"). Ernst then moved for summary judgment on that claim.
Meanwhile, the parties were skirmishing on discovery. The parties had initially agreed that the discovery deadline would be September 30, 1997. Because the Bank had not identified any experts by that discovery deadline and had, in the opinion of Ernst, failed to respond to other discovery requests, Ernst moved to compel. On October 17, 1997, Judge Sikora ordered the Bank to produce certain documents by November 14, 1997, to provide further answers to certain interrogatories by November 21, 1997, and to complete all written discovery by November 30, 1997. As of November 30, the Bank had not identified any experts.
On September 12, 1997, three weeks before the then scheduled end of discovery, the Bank noticed Ernst’s deposition for September 22 and 23. The Bank’s attorneys became too busy on other matters to take the deposition on those days and canceled the deposition. They moved for a 60 day extension of the discovery in order to take Ernst’s deposition. This motion was allowed. Nevertheless, without going into further excruciating detail as to why, except that it was due principally to the schedule of defense counsel, the deposition did not happen before November 30, 1997.
This court heard argument on the Section 5(a)(5) claim on January 27, 1998. At that hearing, it appeared that there was a dispute as to the scope of Judge Fabricant’s order of March 10, 1997. The question was whether Judge Fabricant had dismissed some but not all of the Section 5(a)(5) claim and whether what was left were only the claims involving the surface oil spills or whether claims involving underground storage tanks (“USTs”) were also still viable. This court concluded that no part of the Section 5(a)(5) claim had been dismissed, but in the face of the Bank’s claim that it had not understood that to be so, the court allowed the Bank to file, if it felt it necessary, an affidavit under Mass.R.Civ.P. 56(f) (“Rule 56(f)”), identifying what further discovery it would need to respond fully.
The court did not invite the Bank to file any further pleadings at that time, to supplement the record, to respond further to Ernst’s discovery, to identify any new experts, or to file affidavits of any experts. Nevertheless, since the hearing on the motion for summary judgment, in addition to the affidavit filed under Rule 56(f), the court has received from the Bank the following: Plaintiffs Emergency Motion for Leave to File Second Supplemental Memorandum in Opposition to Defendant’s Motion for Partial Summary Judgment, Plaintiffs Second Supplemental Memorandum in Opposition to Defendant’s Motion for Partial Summary Judgment, Affidavit of Dr. Michael J. Wade, Affidavit of Peter M. King and Plaintiffs Supplemental Response to Ruth Brown Ernst’s First Set of Interrogatories (for the first time identifying Wade and King as trial experts). All these documents were filed March 2, 1998. Neither the answers to interrogatories nor the Affidavit of Dr. Michael J. Wade were signed. Ernst has vehemently objected to all of these filings.
The court has reviewed the Affidavit of Arthur P. Kreiger (“Kreiger Affidavit”) filed pursuant to Rule 56(f). Mass.R.Civ.P. 56(f) requires that such an affidavit demonstrate why the party cannot present facts to justify his opposition. Mass.R.Civ.P. 56(f). The Kreiger Affidavit offers no adequate basis as to why this court should not proceed promptly to decide the motion for summary judgment based on the record as of the date of the hearing.
First, the affidavit states that the reason that the Bank wants to depose Ernst is because it “seeks to present evidence regarding Mrs. Ernst’s activities at the site and the releases of oil there.” This is what this case is about and has been since before the complaint was brought. Nevertheless, the Bank never sought to go to the source of this information until three weeks before discovery closed, this in the face of aggressive defense by Ernst at every turn challenging the Bank’s statements of its claim. From all the paper discovery the Bank has done, the information it has received from third persons and the information it has received from the numerous experts it has had on the Site over the years, it cannot give this court one hint of any fact it expects to get from Ernst, if it did get a chance to depose her. Furthermore, there is a substantial likelihood that Ernst would not be able to provide much usable information. She has not owned the Site for 22 years, did not own the Site at the time of either the installation or removal of the USTs, has not operated the heating oil business at the Site for 24 years, is 76 years old and is in ill health.
Secondly, the affidavit states that the Bank wants “to present evidence that the oil found at the Site dates from the period before 1974, while Ernst owned the Site and operated the heating oil business there.” The Bank has had experts on this Site since 1993. Until March 2, 1998, it never had anyone who would say that the oil contamination occurred prior to 1974. There is no excuse for this dilatory behavior but, as discussed later in this opinion, merely establishing that the oil contamination occurred while Ernst owned the property would not, in any case, carry the day for the Bank.
Lastly, at the hearing on the motion for summary judgment, the Bank stated that it was not aware that the UST claims had not been dismissed. It wanted an opportunity to present evidence on these claims and had, it said, been prejudiced by this misapprehension as to the status of the claims. However, the affidavit makes no distinction between the surface spill claims and the UST claims. The information that counsel says he needs to defend against this motion for summary judgment — Ernst’s activities on the Site and the time *469 of the spills — would have been needed to defend against the surface spills, claims it knew had not been dismissed.[3] Therefore, the Kreiger Affidavit provides no justification to allow the Bank to continue the discovery in this case.
FACTS OF THE CASE
The following facts are taken from the record established as of the date of the hearing on Ernst’s motion for summary judgment, January 27, 1998, one and one half years after this lawsuit was filed.
The Site consists of approximately 47 acres and included both a house and a barn. Ernst, who is now 76 years old, a widow and not in good health, held a partial ownership interest in the Site from 1961 until 1976. Ernst and her husband, before his death, operated a goat dairy and a heating oil business at the Site. The heating oil business had been commenced by Warren and Julia Ernst in 1956. These Ernsts installed the USTs which are at the core of this dispute. Ernst and her husband also owned another property on the other side of Lancaster County Road, “the abutting property.”
The heating oil was stored in USTs which were enclosed in a concrete bunker located between the house and the barn. The concrete bunker was constructed in 1956 and the USTs were installed new at that time. The heating oil was transferred from the USTs to deliveiy trucks by an overhead filler pump located next to the house.
Ernst stopped operating the heating oil business in approximately 1974. She continued, however, to use the oil in the USTs to operate a steam boiler in the barn. Ernst observed the USTs in the bunker on a regular basis and never saw any sign of oil leaks. When she sold the Site, she sold the remaining oil to Christopher Slade. Slade pumped out the oil and, according to him, completely emptied the tanks.
On April 26, 1976, Tavares purchased the Site and the abutting property. On August 23, 1983, he sold the Site to Robert and Patsy Bell, who gave a mortgage to Credit Northeast, Inc. which assigned the mortgage to the Bank. The Bells defaulted, and on November 25, 1991, the Bank received a foreclosure deed to the Site and became the owner of the Site. Tavares continues to own the abutting property.
In October 1993, the Site was subdivided. On October 29, 1993 Joshua Gould of J.T. Gould Excavating, Inc. (“Gould”) removed one 2,000 gallon and four 3,000 USTs and on November 5, 1993, he removed one 500 gallon and one 1,000 gallon USTs. The 1,000 gallon tank was leaking oil and, according to him, water when it was removed.
The Bank retained a Licensed Site Professional (“LSP”), Blake A. Martin of Groundwater Associates (“GWA”), to oversee the cleanup of the Site. The Bank hired an environmental consultant, Charles A. Gifford, III, (“Gifford”) to assist the Bank in handling issues associated with the contamination. On November 11, 1993, GWA made its first visit to the site. Martin never inspected the tanks because Gould had already disposed of them. Several months later, Gifford investigated the Site and the removal of the tanks. In his report, he confirmed the oil leaking at the time of the removal and other problems with the removal.
In January 1995, Lot I of the site (the lot on which the USTs were located) was sold by the Bank.
LEGAL ANALYSIS
This court grants summary judgment when there are no genuine issues of material fact in dispute and where the summary judgment record entitles the moving party to judgment as a matter of law. Aught, Inc. v. Liberty Mutual Ins. Co., 410 Mass. 117, 120 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating affirmatively that there is no genuine issue of material fact in dispute on any relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the other party is unlikely to submit proof of an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourvacilas v. General Motors Corp., 410 Mass. 706; 716 (1991). In evaluating the strength of a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party and indulge all references in favor of that party. Blare v. Husky v. Injection Molding Sys. Boston, Inc., 419 Mass. 437, 438 (1995).
Because Ernst no longer owns the Site and because the only contamination the court is now considering is oil contamination, the only Section of G.L.c. 2IE which is left for discussion is Section 5(a)(5). That section provides in pertinent part that “... any person who otherwise caused or is legally responsible for a release or threat of oil or hazardous material from a vessel or site, shall be liable, without regard to fault.” G.L.c. 2IE, §5(a)(5).[4] In order for Ernst to be liable under Section 5(a)(5), the Bank must be able to prove that she caused a release of oil and that release caused the contamination. Griffith v. New England Tel. And Tel. Co., 420 Mass. 365, 369 (1995) (“Griffith II); Marenghi v. Mobil Oil Corp., 420 Mass. 371, 374 (1995) (“Marenghi II). In Griffith II, the court accepted that the tanks caused the contamination and, for purposes of this motion, this court will assume that the tanks in question here caused the contamination. This is not enough. First, there must be evidence that the contamination occurred during the period when the defendant was responsible for the tanks. Griffith II at 369-70. Additionally, the defendant must also have acted some way from which it may be concluded that *470 her conduct caused the contamination. Id. at 370. Res ipso loquitur evidence is not enough. Id. For example, there must be some evidence to show why the tank leaked, that there was something the defendant could have done to prevent the leak, that it was unreasonable for the defendant to use that tank for “over 22 years,” Marenghi II at 374, or that the tank was improperly installed. Id.
In the Marenghi litigation, the defendant was the one who originally installed and owned the tanks and who brought the oil to the premises. Marenghi v. Mobil Oil Corp., 416 Mass. 643, 644 (1993) (“Marenghi I"). Evidence that the property was contaminated by the oil brought to the premises and stored in tanks owned by the defendant was not sufficient to establish liability. Marenghi II at 374. There must be some evidence that the defendant’s conduct was the cause of the contamination. Id.
Here, Ernst has submitted an affidavit that she often climbed down into the concrete bunker where the tanks were kept and never saw any contamination. The tanks were designed to last at least 20 years and likely would have lasted much longer. Ernst sold her interest in the property during the twentieth year after the installation of the tanks. The Bank has offered this: that Ernst owned the property for a period of time after the installation of the tanks and before their removal, that she operated the heating oil business at the Site for part of the time the business was in existence, that there were some minor surface spills on the asphalt driveway and perhaps that the operation of the business was, in general, sloppy. The Bank does not provide any information as to the amount of the surface spills, when they occurred, nor the effect, if any, of the alleged sloppy business operations.[5]
The Bank arranged for the removal of the USTs when it subdivided the property. The tanks were never examined by the Bank’s experts prior to their disposal. There is no evidence from which anyone could opine as to the condition of the tanks upon that removal. Under the circumstances, it is inconceivable that anyone could offer any evidence to show why the tanks leaked, other than the tanks just may have worn out. Wearing out, without a duly to maintain, a duty which was not on Ernst during the period of her ownership, is not enough to establish liability. Marenghi II at 374 and n. 5. No one has offered an opinion that it was unreasonable to use these tanks for 20 years.
The Bank is now also seeking to take the deposition of Ernst, although it did not do so within the time of the original tracking order or the extended period allowed by this court. This court has not granted leave for the Bank to do so now. Nevertheless, the court has considered whether it would make a difference to this case if the Bank were allowed to depose Ernst. It is unlikely to do so. Ernst was not an owner when the tanks were installed, nor when they were removed. No one alleges that she is a metallurgist nor an environmental expert. Therefore, she is unlikely to know anything or to be competent to testify as the installation, removal, condition of the tanks on removal, or the expected life of a UST. Indeed, the Kreiger Affidavit does not identify any facts that Ernst is likely to know that would be pertinent to the legal analysis. In short, on this record, the Bank will be unable to show that any actions by Ernst caused oil contamination from the USTs.
Lastly, there is no evidence that the contamination has been caused by the surface spills which did admittedly occur during Ernst’s tenure.[6] The evidence is quite thin as to there being any surface spills at all. Two witnesses testified that there were small spills on the asphalt driveway which were immediately cleaned up. Neither Gould, Martin nor Joseph Cerutti, the project geologist on the Site, saw any evidence of surface spills. Likewise, there was no evidence of any spilling from the pipes used to fill the delivery trucks. There were some unsubstantiated field notes that someone told Gould that the operators of the heating oil business were very sloppy with the fuel pumps. Gould was not able to corroborate even this hearsay and there is no evidence that any of this took place, if it did, when Ernst owned and operated the business. There is no evidence that any surface spills actually caused the contamination. Without any of this evidence, the Bank will not be able to prove its case against Ernst for liability for contamination as a result of the surface spills. Griffith II at 369; Providence and Worcester RR. Co. v. Chevron U.S.A, Inc., 416 Mass. 319, 323 n. 3 (1993).
Ernst has moved for summary judgment on Counts I and II of her counterclaim. Count I claims that the Bank is the present owner of the Site, that it discovered the contamination when it removed the tanks, that it caused further contamination upon removing the tanks, that it failed to conduct its cleanup activities according to the appropriate regulations, that it should be liable for all of the cleanup costs, and that it is not entitled to the exemption for secured lenders. Count II seeks a declaration that the Bank is responsible for any costs associated with the cleanup of the oil contamination and that Ernst has no liability for any contamination found at the Site.
Because this court has determined that Ernst is not liable on the Bank’s direct claim against her, there is no need for it to decide the counterclaim. Because it has been determined that Ernst has no liability under G.L. 2 IE for any of the cleanup costs at the Site, she no longer has an interest in this matter and has no standing to pursue a claim against the Bank. See Guaranty-First Trust Co. v. Textron, 416 Mass. 332, 338 (1993) (injured parties have standing under G.L.c. 21E); United Oil Paintings, Inc. v. Commonwealth, 30 Mass.App.Ct. 958, 959 (1991) (a party has standing when she “can allege an injury within the area of concern of the statute”) (citation omitted). And, simi *471 larly, once this court has determined that Ernst has no liability for cleanup costs here, there is no longer any actual controversy between Ernst and the Bank which would require a decision from this court. Colangelo v. Board of Appeals of Lexington, 407 Mass. 242, 247 (1990) (even where there has been a dispute between the parties, where that dispute no longer exists, there is no longer an actual controversy requiring a decision); Wallerstein v. Board of Bar Examiners, 414 Mass. 1008, 1009 (1993) (where a declaratory judgment action is dismissed without a decision on the merits, the court is not required to determine the rights of the parties). Therefore, Counts I and II of Ernst’s counterclaim shall be dismissed.
ORDER
For the reasons stated in this opinion, the motion for partial summary judgment of defendant Ruth Brown Ernst shall be, and it hereby is, ALLOWED and Counts I and II of the counterclaim of Ruth Brown Ernst shall be, and they hereby are, DISMISSED.

Editor’s Note: For another opinion in this matter see 5 Mass. L. Rptr. No. 18, 413 (August 5, 1996).

 This property is located at 38 Lancaster County Road, Harvard, Massachusetts. The part of this property in dispute is that on which a house and a bam sit (the “Site”).

 The counterclaim also requests an award of attorneys fees and expenses pursuant to G.L.c. 21E, §4A (Count III), damages, attorneys fees and expenses under G.L.c. 93A, §§2, 9 and 11 (Count IV), and attorneys fees and expenses under G.L.c. 231, §6F (CountV). Ernst has not requested any action by the court on these claims.

 The likely reason that the Bank did not focus on the surface spill claims is that it had conceded that summary judgment could be entered against it on that part of the claim. However, the affidavit makes no distinction between that claim and the UST claim as to the information the Bank says it needs to oppose Ernst’s motion.

 Other than her obligations under G.L.c. 2IE, there is no evidence that Ernst owed any express duty to anyone nor any contractual obligation concerning the tanks. Moreover, when Ernst owned the Site, there were no regulatory requirements, industry standards or other recognized legal requirements applicable to oil tanks. See Thompson Affidavit; Marenghi v. Mobil Oil Corp., 420 Mass. 371, 374 n.5 (1995) at n. 5.

 The Bank has sought to offer the Affidavit of Dr. Michael Wade in support of its opposition to Ernst’s motion and this court has denied the Bank’s motion to submit it, principally because it is wildly untimely. It is also unsigned. The court has, however, read it and notes that the best that it could do for the Bank, if it were to be believed, would be to offer evidence that the contamination occurred prior to the date that Ernst sold the property. It does not identify any action of Ernst that contributed to cause any leak (nor does it eliminate the period of time before Ernst owned the Site as a time when the contamination could have occurred). This proof is not enough to establish liability. Griffith II at 369-79; Marenghi II at 374.

 The Bank has conceded that summary judgment may be entered in Ernst’s favor on the surface oil spills. See Plaintiffs Supplemental Opposition to Defendant’s Motion for Partial Summary Judgment. The Bank also agreed at the hearing that these claims were not viable. The Bank now seeks to withdraw this concession. To obviate any confusion about the status of this part of the Section 5(a)(5) claim and to foreclose any further complaining from the Bank that it did not understand the ruling of this court, the court will consider whether the surface spill part of the Section 5(a)(5) claim has any vitality.