Toomey, J.
INTRODUCTION
The plaintiff, Frontier Insurance Co. (Frontier), as subrogee of its insured, Cleghorn Oil Co. (Cleghorn), brought this action against the defendants[2] pursuant to G.L.c. 21E, §4A, seeking contribution and reimbursement for response costs incurred by Frontier in remediating an oil spill which occurred on September 2, 1999, at the Gardner Middle School (“school”). The five defendants have each filed motions to dismiss the plaintiffs complaint; they assert, under MRCP 12(b)(1), that this court lacks subject matter jurisdiction, and, under MRCP 12(b)(6), that the complaint fails to state a claim for which relief may be granted. In support of their motions, defendants state that, prior to fifing the complaint, the plaintiff did not comply with G.L.c. 2 IE, §4A, which specifies the prerequisites to bringing claims for environmental contamination response costs. Additionally, defendants assert that plaintiffs have not adequately alleged a causative link between defendants’ conduct and injury to plaintiffs. For the reasons that follow, defendants’ motions to dismiss are DENIED.
BACKGROUND
The plaintiff alleges the following facts in its complaint. In or about October 1995, Callahan entered into a contract with the Town of Gardner for the construction of the school. The plaintiff claims that the initial design of the emergency generator system at the school provided for the installation of a diesel fuel tank which was attached to an emergency pressure relief valve designed to open only in the event of a fire. The initial design had no provision for any piping allowing for remote filling of the emergency generator fuel tank.
Sometime in 1999, an inspector for the Gardner Fire Department disapproved of the design plan and ordered that the design be amended to the end that the diesel fuel tank be capable of remote filling through fill pipes installed upon the exterior of the school. Because of concerns regarding fumes in the generator room and the possibility of oil release, the inspector ordered that the plan provide that the pressure relief *6 valve on the diesel fuel tank be capped oil tight and that a berm be installed in the generator room. Subsequently, remote fill and vent piping was installed; the pressure relief valve on the diesel fuel tank, however, was not capped as ordered by the inspector.
On September 2, 1999, according to plaintiffs complaint, an employee of Cleghorn, at the direction of a school janitor, employed by National, delivered 4200 gallons of fuel oil through the fill pipe connected to the emergency generator fuel tank. As the oil filled the diesel fuel tank, the pressure relief valve opened, unnoticed by the delivery driver, allowing oil to be released to the floor of the generator room. The oil migrated from the generator room to the floor drains in the next room and the oil was discharged therefrom into the Gardner sewer system. The oil then traveled through the Gardner sewer system to the local Waste Water Treatment Plant (“Plant”) where it was discovered by Plant personnel. According to plaintiffs, had the pressure relief valve been capped as ordered by the inspector, oil would have been released through the vent pipe and thus immediately alerted the driver to the spill.
The plaintiff complains that defendants, in the respects hereinafter recited, were liable for the oil release through the pressure valve causing the plaintiff to sustain damages in excess of $750,000. More particularly, the complaint alleges the following. First, Tappe, as architect, was responsible for approving any required modifications during the construction process and for insuring that such modifications were properly performed. Second, Callahan, as the general contractor, participated and oversaw the design and construction of the school, including the negligent design and installation of the emergency generator system, diesel fuel tank and associated piping. Third, G&G, as the electrical engineer designing, participating in and overseeing the design and construction of the school, was responsible for the negligent design and installation of the emergency generator system and diesel fuel tank. Fourth, Jupiter, as the electrical contractor, participating in and overseeing the design and construction of the school, was responsible for the negligent design and installation of the emergency generator system, diesel fuel tank and associated piping. Fifth, National’s employee negligently instructed the driver to deliver oil through the fill pipe connected to the diesel fuel tank attached to an emergency generator rather than the fill pipe attached to the school’s 20,000 gallon oil tank; National was thus liable on a respondeat superior theory. As a consequence of those asserted failings by defendants, plaintiff seeks recoveryfor negligence and pursuant to G.L.c. 21E, §4A.
DISCUSSION
Subject matter jurisdiction is an issue to be determined by the court. Mass.R.Civ.P. 12(b)(6). Parties cannot waive jurisdiction or confer jurisdiction where it does not exist. Dennis v. Dennis, 337 Mass. 1, 4 (1958) (citations omitted). Mark v. Kahn, 333 Mass. 517, 519 (1956). See also Shea v. Neoponset River Marine & Sportfishing, Inc., 14 Mass.App.Ct. 121, 129 (1982) (stating that a court’s lack of subject matter jurisdiction is a non-waivable issue that can be raised by either party at any time). At bar, all defendants challenge the jurisdiction of the court to entertain plaintiffs complaint.
Additionally, defendants Jupiter, Tappe and G&G, invoking Mass.R.Civ.P. 12(b)(6), challenge the substantive sufficiency of the complaint. According to that rule, a court must dismiss a complaint for failure to state a claim where “it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977). The court is compelled, however, to accept as true the well pleaded factual allegations of the complaint, as well as any inferences that can be drawn therefrom in the plaintiffs favor. Eyal v. The Helen Broadcasting Company, 411 Mass. 426, 429 (1991). Thus, a court should permit a plaintiff to prevail over a Rule 12(b)(6) motion to dismiss “unless it appears with certainty that he is entitled to no relief under any combination of facts that could be proved in support of his claim.” Brum v. Town of Dartmouth, 44 Mass.App.Ct. 318, 322 (1998).
Applying those principles to the case at bar, this Court concludes that defendants’ jurisdictional and sufficiency challenges against the instant complaints fail and that plaintiff may maintain its action against all defendants.
I. The Sufficiency of the Complaint in Its Suggestion of Defendants’ Liability
Massachusetts General Laws c. 21E, §5(a), sets out five categories of persons liable for response costs incurred as the result of releases that cause contamination. “If a person falls into any of these five categories, the statute imposes liability ‘without regard to fault.’ ” Because the matter at bar involves the release of oil, we need look only to the effects of §5(a)(l) and §5(a)(5) to determine whether the defendant(s) may be exposed to liability for the response costs incurred. See Marenghi v. Mobil Oil Corp., 420 Mass. 371, 372-73 (1995).
It is beyond dispute that the defendants cannot be held liable under §5(a)(l) because they are not the present owners of the tank or the site where the release occurred. Therefore, in order to succeed on the question of liability, the plaintiffs will have to establish, consistent with §5(a)(5), both that the defendants caused the release and that the release caused the contamination. Defendants Jupiter, Tappe and G&G argue that plaintiffs claims should be dismissed because the complaint does not sufficiently assert that they are “legally responsible," within §5(a)(5), for the subject oil release.
In support of their argument, the defendants contend that such legal responsibility “must be grounded in contractual relationships and duties owed to parties seeking recovery.” Marenghi, 420 Mass. at 373, and Griffith v. New England Telephone & Telegraph Co., 420 Mass. 365, 367-68 (1995). To establish causation under §5(a)(5), the standard that must be met is *7 “actual proof of causation.” Griffith, 420 Mass. at 369. In this case, plaintiffs complaint adequately alleges a proximate cause between acts/omissions of Jupiter, Tappe and G&G and the oil release.
Unlike Marenghi and Griffith, which dealt with lease arrangements pertaining to the care and maintenance of underground storage tanks, the allegation at bar is improper design, modification and approval of an emergency generator fuel tank installed at the school. The plaintiff contends that Jupiter, Tappe and G&G were responsible for the design and approval of the construction work at the school and that Tappe and G&G were the entities which approved the subject tank’s installation. In pursuit of that contention, plaintiff has crafted a complaint alleging that, as the electrician, architect and designer, Jupiter, Tappe and G&G were responsible for approving any required modifications and insuring that such modifications were properly performed. In their approval of the modifications, the complaint alleges, Jupiter, Tappe and G&G negligently failed to perform their required duties.
Of course, the question of whether or not Jupiter, Tappe and G&G are responsible for not insuring that the ordered modifications were properly performed and are, therefore, “legally responsible” pursuant to G.L.c. 2 IE, §5(a)(5) for the subject oil release, must await trial. The instant complaint adequately gives voice to plaintiffs claim that the failure of Jupiter, Tappe and G&G to insure that the ordered modifications were properly performed proximately caused the oil release. The complaint thus firmly establishes a claim upon which relief maybe granted, and the motions to dismiss for failure to satisfy Rule 12(b)(6) will be denied.
II. The Adequacy of the Assertion of the Court’s Jurisdiction
Defendants Tappe, Callahan, G&G, Jupiter and National next argue that, assuming arguendo that plaintiff is found to be a party possessing the potential for recovery under G.L.c. 21E, §5, dismissal should nevertheless be ordered because this court lacks subject matter jurisdiction over plaintiffs claims, the plaintiff having failed strictly to comply with the presuit notice requirements of G.L.c. 21E, §4A. The crux of defendants’ argument is that plaintiff, in violation of statutory imperatives, omitted to provide requested information necessary for the defendants to evaluate the plaintiff s claims for reimbursement and neglected to engage in alternative dispute resolution. That argument is not, however, supported by the record at bar.
The importance of G.L.c. 21E’s requirement of presuit exchange of information cannot be overestimated and is a sensible implementation of the sound public policy of encouraging remediation and avoiding litigation. But, invocation of that policy, and its laudable ends, cannot defeat a lawsuit which follows upon a plaintiffs satisfaction of the Legislature’s prerequisites. Such is the case at bar.
Massachusetts General Laws chapter 2IE creates a private right of action arising from the release or threat of release of hazardous materials, including oil. G.L.c. 21E, §1. See Rudnick v. Hospital Mortgage Group, Inc., 951 F.Sup. 7, 8 (1st Cir. 1996). The statute sets forth procedures for negotiating claims for reimbursement of assessment and response costs prior to the filing of suit. The procedures include, in pertinent part: (1) the provision of written notice to potentially responsible parties which suggests reimbursement of equitable shares of the costs of a response action, and (2) a response from the potentially responsible party indicating whether or not the responder will pay its equitable share and requesting any further information or documentation the responder needs to evaluate the notifier’s claim.
The statute further provides that “upon request by the responder, the notifier shall provide additional information or documentation reasonably requested by the responder concerning the basis of the responder’s alleged liability or the response action or both.” G.L.c. 21E, §4A(b). When a responder makes a reasonable request for information from a notifier and receives an inadequate response, the statutory purpose of G.L.c. 21E is frustrated and the suit flirts with dismissal.
Defendants now maintain that plaintiff has failed to satisfy the preconditional mandates of the statute, thus depriving the court of jurisdiction to entertain plaintiffs complaint. Plaintiff rejoins that, because all reasonable requests by defendants for information were honored by the plaintiff, defendants’ motions to dismiss, on jurisdictional grounds, the G.L.c. 21E counts should be denied. Plaintiff has the better of the argument.
A. Jupiter’s Liability pursuant to 2 IE
Jupiter contends that Frontier’s failure to comply with pre-suit, statutory procedures is fatal to its claims against Jupiter. In response to Frontier’s G.L.c. 2IE demand letters, Jupiter stated that it had installed the emergency generator fuel tank and that such installation was approved by the architect and engineer. Jupiter further claimed that it had no knowledge of design or installation changes to the emergency generator involved in the release. Jupiter now claims that Frontier provided no information to contradict the fact that Jupiter had any knowledge of any design or installation changes.
Pursuant, however, to G.L.c. 21E, §4A(a), the recipient of a §4A notice letter must respond within 45 days and must request additional information or documentation necessary to evaluate the claim for liability. Jupiter’s response failed to contain any such requests for further documentation or information from the plaintiff, and therefore, its argument that plaintiff failed to provide information is without merit. The statute envisions clarification, not rebuttal, at this stage of the proceedings. The claim at bar does not suffer from a want of jurisdictional foundation.
*8 B.Tappe and G&G’s Liability pursuant to 2IE
The motions to dismiss for lack of jurisdiction brought on behalf of Tappe and G&G are denied because there were no requests for information and or documentation contained within Tappe’s and G&G’s response to the plaintiffs G.L.c. 2 IE demand. Thus, defendants’ argument that the plaintiff failed to provide requested information is without merit and provides no compelling basis for allowing their motions to dismiss. See G.L.c. 21E, §4A(a).
C. National’s Liability Pursuant to 2IE
The motion brought by National will be denied because the basis of plaintiffs claim against National is that a National employee directed Cleghorn’s delivery driver to the wrong fill pipe at the school. Given that rather uncomplicated allegation by plaintiff, National could readily have evaluated plaintiffs claim simply by interviewing its own employee. In fact, National’s response to plaintiffs demand letter included the employee’s version of his interaction with Cleghorn’s driver on the date of the oil spill. Further, National was properly notified that remediation documents were available for copying and inspection at plaintiffs counsel’s office or the offices of the DEP. National had sufficient access to any information necessary to assess the extent and nature of the oil spill and subsequent remediation. For National to challenge jurisdiction by reason of a deficiency in information provided it by plaintiff is to deny reality.
D. Callahan’s Liability Pursuant to 2IE
In response to plaintiffs G.L.c. 2 IE demand, Callahan provided plaintiff an extended list of requests which placed an unreasonable burden on the plaintiff. Callahan requested documentation and information that was either already in Callahan’s possession or would have required plaintiff to retain engineers and experts for purposes of response. The plaintiff did provide Callahan with appropriate information sought by those of Callahan’s requests that were reasonable. The plaintiff adequately expressed the legal elements for contribution from Callahan and provided a signed affidavit documenting the failure of potentially responsible parties to take the steps, ordered by the fire inspector, to modify the emergency generator fuel tank in order to prevent an oil spill from occurring. In addition, the plaintiff also advised Callahan that remediation documentation and information were available for copying and inspection at the plaintiffs counsel’s office or the DEP. Plaintiff contends, without contradiction, that Callahan never accepted its offer or otherwise requested the opportunity to copy or inspect such documentation.
Thus, plaintiff has complied with the G.L.c. 21E, §4A requirements by timely providing Callahan with all the information and documentation reasonably requested by Callahan. Allowing Callahan to make onerous requests would defeat the purpose of the statute, which encourages "parties to settle environmental liability suits without formal litigation proceedings.” Zecco, Inc. v. Travelers, Inc., 938 F.Sup. 65, 66 (1st Cir. 1996). Callahan’s motion to dismiss for want of jurisdiction will also be dismissed.
III. Alternative Dispute Resolution of Plaintiffs 2 IE Claims
The parties are required to confer in good faith within sixty days after the response in an effort to resolve their disputes, and either party has the option, within seventy-five days of the response, to request alternative dispute resolution procedures to resolve any disagreement. G.L.c. 21E, §4A(a). In this matter, none of the defendants have admitted to having anything to do with the pressure relief valve or the berm which are central to plaintiffs complaint. Their amenability to the ministrations of a non-judicial resolution process is, accordingly, doubtful. The plaintiff is the only party who has proposed and agreed to participate in alternative dispute resolution. Consequently, the defendants’ present attack upon the complaint on the ground that the plaintiff did not engage in alternative dispute resolution prior to filing suit is wholly devoid of merit.
IV. Plaintiffs Negligence Causes of Action as Duplicative of Its G.L.c. 2 IE Claims
The defendants request that this court dismiss the plaintiffs negligence counts because the causes are merely restatements of the G.L.c. 21E, §4A counts which are defective by reason of their failure to satisfy the statutory conditions precedent to suit. Defendant’s theory is that, insofar as the negligence counts mirror the fatally flawed G.L.c. 21E claims, the negligence counts have “caught the virus,” and cannot survive. The defendants’ request, however, is unavailing because, as noted supra, this court has rejected defendants’ several challenges to the plaintiffs G.L.c. 2 IE counts. Thus, the foundation for defendants’ argument is ill-grounded.
Furthermore, to condemn the negligence counts merely because they resemble, but are elementally distinct from, the G.L.c. 2 IE counts is unwarranted. As the Supreme Judicial Court has observed: “Usually ‘the question of negligence is one of fact for the jury. Only when no rational view of the evidence warrants a finding that the defendant was negligent may the issue be taken from the jury.’ ” Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983), quoting Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 327 (1973). That bias against pre-trial judgments in negligence cases, coupled with the general rule that every person has a duty to exercise reasonable care for the safety of others, Lyon v. Morphew, 424 Mass. 828, 832 (1997), and colored by the realiiy that a finding for the plaintiff upon the negligence causes of action would not be irrational, is sufficient to overcome defendants’ motion to dismiss the negligence counts.
ORDER
The plaintiff has stated statutory claims upon which relief may be granted, this court has subject matter jurisdiction over the G.L.c. 21E matter and the *9 negligence counts are viable. The defendants’ motions to dismiss are, therefore, DENIED.

Tappe, Callahan, G&G, Jupiter and National.