Williams, PJ.
A truck owned by the defendant, Quality Oil Co., Inc. (“Quality”), overturned on an icy roadway, causing an oil spill. The plaintiff, Dartmouth Fire Department No. 3 (“Dartmouth”), helped clean up the spill, and eventually sought reimbursement for its expenses from Quality pursuant to G.L.c. 21E, §4, a section of the Massachusetts Oil and Hazardous Material Release Prevention and Response Act.[1] The trial judge awarded Dartmouth the replacement costs for fire gear under §4 without depreciating the value of it. Quality appealed, urging that the value should have been depreciated. Because Dartmouth did not qualify for relief under §4 and was instead entitled to §5 damages, we return the action to the trial judge for a reassessment of damages consistent with this opinion.
In January, 2011, a home heating oil truck owned by Quality overturned on an icy road in Dartmouth, Massachusetts, spilling oil. Dartmouth assisted with the cleanup of the spill, and billed Quality for various expenses, most of which were paid. Among the expenses was an unpaid invoice in the amount of $7,228.14 for the costs of such fire gear as coats, pants and boots. That clothing had been used previously, and efforts to clean it had failed. Because the gear had a five-year usefulness expectancy, and some of it was already older than that, Quality applied a sixty (60%) percent *36 depreciation rate, and paid Dartmouth $2,891.25, leaving a balance of $4,336.89. Dartmouth maintained that under §4, the proper measure of damages was replacement costs and not depreciated value, and brought this action against Quality. The trial judge agreed with Dartmouth, and awarded the costs of replacing the gear. Quality appealed.
1. The “reasonable costs of... response action” language of G.L.c. 21E, §4 upon which Dartmouth relies appears on a quick reading to be apposite and to apply to such claimants as Dartmouth The statute states that a claimant “who undertakes a necessary and appropriate response action regarding the release... of oil... shall be entitled to reimbursement.” That sentence goes on, however, to state: “from any other person liable for such release.” It is established that §4 governs “private party actions by persons who are strictly liable for cleanup under §5 for recovery from others who are also strictly liable” (emphasis added). Mailman’s Steam Carpet Cleaning Corp. v. Lizotte, 415 Mass. 865, 873-874 (1993), citing Sheehy v. Lipton Indus., Inc., 24 Mass. App. Ct. 188, 197 (1987). See also Martignetti v. Haigh-Farr, Inc., 425 Mass. 294, 298-299 (1997). Dartmouth, simply a responder to the spill, was of course not a person “strictly liable” under §5 for cleanup.[2] Costs — of any measure — are not recoverable in a §4 action from a defendant that does not fit within any §5 (a) category. Id. at 299, citing Griffith v. New England Tel. & Tel. Co., 414 Mass. 824, 826-829 (1993), S.C., 420 Mass. 365, 367-370 (1995). Dartmouth simply did not qualify for relief under §4, and awarding reimbursement costs to it pursuant to that section, or under its aegis, was erroneous.
Quality urges that Dartmouth’s claim for damages should have been brought under G.L.c. 21E, §5 (a) (iii) ,[3] which imposes liability on those responsible for a release “to any person for damage to ... personal property incurred or suffered as a result of such release.” Quality cites Guaranty-First Trust Co. v. Textron, Inc., 416 Mass. 332 (1993), which held that the measure for damages under §5 is “identical to the measure of recovery at common law for damage to ... personal property.” Id. at 333. See also Clean Harbors Envtl. Servs. v. Boston Basement Techs., Inc., 75 Mass. App. Ct. 709, 713 n.4
(2009). And that measure, Quality urges, is fair market value, that is, “the difference between the fair market value of the property prior to the loss and its fair market value after the loss.” Irwin v. Deresh, 2012 Mass. App. Div. 142, 143, citing *37 Massachusetts Port Auth. v. Sciaba Constr. Corp., 54 Mass. App. Ct. 509, 513-514 (2002). Only in limited circumstances involving “special purpose property” such as historic structures or churches, or certain personalty such as heirlooms or paintings, might replacement costs be appropriate. Id,., citing Trinity Church in the City of Boston v. John Hancock Mut. Life Ins. Co., 399 Mass. 43, 48-49 (1987).
Because he specifically awarded damages under §4 and not §5, and because awards under §5 have been expressly held to be subject to common law principles of diminution of fair market value, we cannot discern how or whether the trial judge’s award to Dartmouth would have been different had he decided it under those common law principles. Therefore, we return this action to the trial judge for a reconsideration of the damages award.
Accordingly, judgment for the plaintiff is vacated, and this case is returned to the trial court for a new assessment of damages.
So ordered.

 The pertinent part of §4 is: “Any person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action.”
“A... significant purpose of G.L. 21E is to enable private persons ‘to obtain a certain measure of compensation for loss resulting from environmental damage.’ Simply put, G.Lc. 21E was drafted in a comprehensive fashion to compel the prompt and efficient cleanup of hazardous material and to ensure that costs and damages are borne by the appropriate responsible parties” (citations omitted). Taygeta Corp. v. Varían Assocs., Inc., 436 Mass. 217, 223 (2002). See also Zoning Bd. of Appeals of Holliston v. Housing Appeals Comm., 80 Mass. App. Ct. 406, 408-409 (2011).

 Persons liable under G.L.c. 21E, §5 (a) (l)-(5) are such parties as the “owner or operator” of a site from which there has been a release of hazardous material or oil or of a site upon which such hazardous material was stored or disposed. Other persons liable include those who arranged for the transport, disposal, storage or treatment of hazardous material, or who performed such actions. Id. at §5 (a) (3), (4). And other persons liable include those who caused or are legally responsible for a release, “without regard to fault.” Id. at §5(a) (5). None of these categories remotely describes Dartmouth.

 We note that nothing in G.L.c. 21E would have preempted any common law remedies that Dartmouth might have sought to pursue. Mailman’s Steam Carpet, supra at 870, cited in Clean Harbors Envtl. Servs., Inc. v. Boston Basement Techs., Inc., 75 Mass. App. Ct. 709, 712 & n.3 (2009).